### JOHN L. HARING v. STATE.

1. The defendant kept a room in the city of Paterson, to which persons commonly resorted for the purpose of betting on horse races.  *Held,* that he was properly convicted of keeping a disorderly house.
2. The act of March 30th, 1887, does not make it lawful to keep such a resort, and, if it did, the act is unconstitutional, and in violation of article 4, section 7, paragraph 4, of the state constitution.

On error to the Passaic Quarter Sessions.

Argued at February Term, 1889, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in error, *John W. Griggs.*

For the defendant, *Wm. B. Gourley, Prosecutor of the Pleas.*

The opinion of the court was delivered by

VAN SYCKEL, J.    The plaintiff in error was convicted, in the Passaic Quarter Sessions, of keeping a disorderly house.

The offence consisted in keeping a room in the city of Paterson, for several months in 1887, to which persons commonly resorted for the purpose of betting upon horse races run at various places throughout the country.

The question to be decided is, whether, under the law, as it stood in 1887, the defendant below was subject to indictment for keeping a disorderly house.

On the 15th February, 1811, an act was passed which made horse racing indictable as a nuisance, and declared that all wagers on such races should be utterly void.   *Rev.* 1821, *p.* 550, §§ 1, 3.

In 1835 section 1 of the act of 1811 was repealed.   *Pamph. L.* 1835, *p.* 169.

March 19th, 1846, "An act to prevent horse racing" was passed, which, by its second section, made betting upon horse racing indictable as a misdemeanor, and, by its sixth section,

made all wagers upon such racing utterly void. *R. S., p.* 575; *Pamph. L.* 1846, *p.* 133.

In 1871 a supplement passed to the act to prevent gaming provides: " That all wagers, bets or stakes made to depend upon any race or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event whatever shall be unlawful, and all contracts, for or on account of any money or property or thing in action so wagered, bet or staked, shall be void."

This act of 1871 is now found substantially in the Revision as sections 1 and 3 of the act to prevent gaming. *Rev., p.* 458.

The second section of the act of 1846 was incorporated in the Crimes act in the Revision, and is the fifty-sixth section of that act. *Rev., p.* 237.

That section subjected to indictment a person who made a single bet upon a horse race.

By force of a supplement passed March 11th, 1880, betting upon horse racing was not thereafter indictable. *Pamph. L.* 1880, *p.* 196, § 1.

This act did not in anywise affect the first section of the act concerning gaming (*Rev., p.* 458), which makes wagers upon any race unlawful; it merely relieved from indictment the person who made a bet, but did not legalize such bet.

A pronounced public policy against betting, as a vice, has found clear expression in the legislation referred to.

In *McClean* v. *State*, 20 *Vroom* 471, Chancellor Runyon says: " Under the fifty-sixth section of the act for the punishment of crimes (*Rev., p.* 237), betting upon horse races was a criminal offence, while the supplement to that act, passed in 1880 (*Pamph. L., p.* 195), so amended that section as to repeal the provision making such betting a misdemeanor; it did not repeal or affect the provisions of the act to prevent gaming (*Rev., p.* 458), which declared all wagers, bets or stakes made to depend upon any race, to be unlawful."

Betting was no longer indictable and punishable as a crime, but it was still interdicted, it was still unlawful and against the declared policy of the law; it was one of those things

which, as the trial judge said, "the government of the state was seeking to suppress."

Under the legislation to which reference has been made, the keeper of a place where betting was habitually carried on was unquestionably amenable to indictment.

In *State* v. *Williams*, 1 *Vroom* 104, the Chief Justice says : "Any place of public resort, whether an inn, a dwelling-house, a store-house, or any other building, in which illegal practices are habitually carried on, is a disorderly house." In the same case Mr. Justice Elmer says : "A house to which people promiscuously resort for purposes injurious to the public morals, is a disorderly house."

Our court of last resort, in *McClean* v. *State, supra*, accepted this definition of a disorderly house in its broadest sense, and there declared "that the place kept by McClean was kept in order that the public might resort thereto and engage in the unlawful practice of betting upon horse races, and such practices were habitually carried on there. Any place of public resort in which illegal practices are habitually carried on is a public nuisance, and a person who keeps such a place is guilty of an indictable misdemeanor."

But the defendant relies for immunity from criminal prosecution upon the act of March 30th, 1887, entitled "A further supplement to an act entitled 'An act for the punishment of crimes,' approved March 27th, 1874," which is as follows : "That the performance of any act exempted from punishment under and by virtue or by the operation and effect of chapter one hundred and forty-seven of the public laws of this state of the session of 1880, entitled 'Supplement to an act entitled "An act for the punishment of crimes" (*Revision*), approved March 27th, 1874,' shall render all persons performing such acts amenable and subject to all the provisions of the act entitled 'An act to prevent gaming, approved March 27th, 1874,' so far and to the extent only that the acts of such person shall be deemed unlawful in any civil suit, but not in any other proceeding or for any other purpose whatever." *Pamph. L.* 1887, *p.* 70.

It is ingeniously argued that, under the operation of this act, "betting on horse racing shall be deemed unlawful in any civil suit, but in any other proceeding, and for all other purposes, it shall be deemed lawful; that it shall not be deemed unlawful in any proceeding, or for any purpose, other than a civil action brought under the Gaming act."

Hence, it is insisted, that the acts imputed to the plaintiff in error consisted in his repeatedly doing what he might lawfully do.

It is so manifest, from the peculiar phraseology employed in this enactment, that it was intended to effectuate what is not apparent on its face, that it should receive a very strict interpretation.

The act is expressly limited in its operation "to the performance of any act exempted from punishment by the act of 1880." This restricts it to the persons who bet; they are the only persons to which that act relates, and the only persons exempted from punishment thereby. The act of 1880, as has been previously shown, did not exempt from punishment persons who keep houses for the unlawful purpose of betting on horse races. The act of 1887 does not say that betting on horse races shall be lawful; it does not say that the keeping of a house where such betting is habitually carried on shall not be punishable as theretofore. It leaves those who make bets subject to all the provisions of the Gaming act in a civil suit, but there is no expression to the effect that one who not only bets, but keeps open a place where others are invited habitually to do acts condemned by public policy, shall not be criminally punishable. The act will not be extended by construction in aid of such persons.

A more radical difficulty, however, stands in the way of this defence.

Is the act of 1887 constitutional?

The state constitution, article 4, section 7, paragraph 4, provides as follows: "No law shall be revived or amended by reference to its title only, but the act revived or the section or sections amended shall be inserted at length." "No

act shall be passed which shall provide that any existing law
or any part thereof shall be made or deemed a part of the act,
or which shall enact that any existing law or any part thereof
shall be applicable."

This provision clearly interdicts the legislation before us.
It attempts to amend the first section of the act of 1887, and
to restrict its application, by a reference to its title, without
setting out at length the section as amended.    The act itself
does not show what the law is to be; that can be ascertained
only by reference to the prior law.    It also fails to specify
what the criminal acts exempted from punishment by the act
of 1880 are, and makes the act of 1880 part of the act of
1887 by reference to its title.    It is not an amendment by
implication, but a direct alteration of the previously existing
law by a reference to its title, in order to conceal the change
it was intended to effect.

The object of the constitutional amendment was to show
the lawmaker the true meaning of a proposed enactment,
without the necessity of resorting to the old law.    *Van Riper*
v. *Parsons*, 11 *Vroom* 123; *Colwell* v. *Chamberlin*, 14 *Id.* 387.

The changes effected by the legislation which came under
review in *Evernham* v. *Hulit*, 16 *Vroom* 53, and in *Campbell*
v. *Board of Pharmacy, Id.* 241, clearly appeared on the face
of those acts.

*Christie* v. *Bayonne*, 19 *Vroom* 407, is in point.    That
case holds that the act of April 25th, 1884, is an imperfect
and incomplete act of legislation, in that the privileges in-
tended to be conferred are not specified in the body of the
act, and that reference must be made to other acts to under-
stand its scope.

Mr. Justice Depue, in delivering the opinion of the court,
says, "that the act of April 25th, 1884, does not come within
the range of the principle on which the cases of Evernham *v.*
Hulit and Campbell *v.* Board of Pharmacy are founded; that
it is an imperfect and incomplete act of legislation; that no
member of the legislature, called upon to cast his vote on the
passage of the act, would be informed by an inspection what

particular rights or privileges were designed to be conferred; nor would the public, by inspection, be informed of the nature of the legislation about to be adopted."

The language used by the draughtsman of the act of 1887 was ingeniously chosen, to conceal from the legislature and from the public the object to be effected by it.

Such legislation is proscribed and prohibited by the organic law.

The case before us furnishes conspicuous proof of the wisdom of the constitutional mandate.

In my judgment, the act of 1887 is unconstitutional and void.

The judgment below should be affirmed.