THE STATE OF NEW JERSEY v. JACOB N. DIAMANT.

Argued June 12, 1905—Decided November 22, 1905.

Those who maintain a place where usurious rates of interest are taken and where the statutes prohibiting usurious interest are habitually violated are indictable for keeping a disorderly house.

----

On *certiorari* to the Camden Quarter Sessions.

Before Justices GARRISON and GARRETSON.

For the state, *Frank T. Lloyd,* prosecutor of the pleas.

For the defendant, *Frederick A. Rex.*

The opinion of the court was delivered by

GARRETSON, J.   The indictment has been removed into this court for the purpose of allowing the defendant to move to quash it.

This motion is now made, and the ground of objection to the indictment is that it does not charge any crime or misdemeanor under the law.

The allegations of the indictment are that Jacob N. Diamant and others, at times and a place specified, "unlawfully did keep and maintain a certain common, ill-governed and disorderly house, and in the said house, for their own lucre and gain, certain persons then on the said other days and times unlawfully and willingly did cause and procure to frequent and come, and that the said Diamant and others then and there in said house did make loans to said persons of certain sums of money at usurious rates of interest and in excess of the amounts provided by law, to the great damage and common nuisance," &c.

It cannot be disputed that a place where persons gather together to do acts which by the law are made crimes or misdemeanors is a disorderly house.   *State* v. *Lovell,* 10 *Vroom* 463.

It is provided by statute (*Gen. Stat., p.* 3704, § 7) "that no person or corporation shall, upon contract, take directly or indirectly, for loan of any money, wares, merchandise, goods and chattels, above the value of six dollars for the forbearance of one hundred dollars, for a year, and after that rate for a greater or less sum or for longer or for shorter time," and the penalty for the violation of this statute is found in section 2 (*Gen. Stat., p.* 3703), and is that in suits to enforce any contracts on which a higher rate of interest shall be reserved than is allowed by the law of the place where the contract was made, no interest whatever is recoverable.

In the case of *McClean* v. *State,* 20 *Vroom* 471, decided in the Court of Errors and Appeals, Chancellor Runyon delivered the opinion of the court.   McClean was indicted for keeping a disorderly house; the offence was carried on by him in a box or booth upon the grounds of a society for horse

racing, in the business of book-making or betting upon horses. The box or booth was frequented during the racing season by numbers of persons who were wont to bet upon the races. The court says: "The defendant thus kept a place of public resort for the purpose of betting upon the result of horse races."

"Under the fifty-sixth section of the act for the punishment of crimes (*Rev., p.* 237), betting upon horse races was a criminal offence. While the supplement to that act passed in 1880 (*Pamph. L., p.* 195) so amended that section as to repeal the provision making such betting a misdemeanor, it did not repeal or affect the provisions of the act to prevent gaming (*Rev., p.* 458), which declared all wagers, bets or stakes made to depend upon any race to be unlawful. The place kept by McClean was kept in order that the public might resort thereto and engage in the unlawful practice of betting upon horse races, and such practices were habitually carried on there." "Any place of public resort in which illegal practices are habitually carried on is a public nuisance, and a person who keeps such a place is guilty of an indictable misdemeanor." * * * "The mere fact that the legislature has repealed the enactment by which betting on horse races was made an indictable offence obviously does not render the practice of betting upon horse races any the less injurious to public morality than it was before."

In *Haring* v. *State,* 22 *Vroom* 386, the defendant was convicted of keeping a disorderly house. The offence consisted of keeping a room in the city of Paterson for several months in 1887 to which persons commonly resorted for the purpose of betting upon horse racing. The question for decision was whether under the law, as it stood in 1887, the defendant was subject to indictment for keeping a disorderly house. Judge Van Syckel, in an opinion in that case, finds by reference to the various statutes as to horse racing and betting upon horse races that in 1887 no statute was in force under which betting upon horse racing was indictable, and he concluded from these statutes and the statute to prevent gaming that while

betting upon horse racing was not indictable by force of the statutes of 1880 (*Pamph. L., p.* 196, § 1), yet that a pronounced public policy against betting as a vice has found a clear expression. "Betting was no longer indictable and punishable as a crime, but it was still interdicted, it was still unlawful, and against the declared policy of the law."

The taking of usurious interest is a violation of the positive law of the state, and to maintain a place for such habitual violation, or a place where agreements for such habitual violations may be made, is a misdemeanor, and everybody concerned in the maintenance of such a place is guilty of a misdemeanor.

The other objections to the indictment are not well founded.

The motion to quash is denied.