SUPREME COURT

THOMAS MURPHY agt. THE BOARD OF POLICE, &C., OF NEW YORK.

*Injunction — does not lie merely to restrain an illegal arrest — Book-making a violation of chapter 178 of Laws of 1877.*

The acts done at Madison Square Garden during the walking match, and which constitutes the practice of book-making, are plain violations of the statute of 1877 (*Laws of* 1877, *chap.* 178), and the persons committing them are guilty of misdemeanors, and the arrest of such persons would be a legal arrest.

An injunction does not lie merely to restrain an illegal arrest for the reason that if a party is illegally arrested he has a prompt and efficacious relief by *habeas corpus*, and also relief for the wrong by an action for damages.

*Special Term, March,* 1882.

*D. Levien,* for plaintiff.

*E. H. Lacombe,* for defendants.

LAWRENCE, *J.*—" I agree with the learned counsel for the defendants, in regard to the propositions stated in the first and second points of his brief, to wit: That if the acts done at Madison Square Garden during the walking match, and

which constitute the practice of book-making, are violations of the statute of 1877, the persons committing them are guilty of misdemeanors, and that the arrest of such persons would be a legal arrest, and that if, on the contrary, such acts are not violations of the statute of 1877, then an arrest for the doing of such acts would be illegal, and that an injunction does not lie merely to restrain an illegal arrest, for the reason that if a party is illegally arrested he has a prompt and efficacious relief by *habeas corpus*, and also redress for the wrong by an action for damages."

With regard to the first proposition, I deem it sufficient to say that " book-making " appears to me to be a plain violation of the statute. Chapter 178 of the Laws of 1877, provides " that any person who shall keep any room or building, or any part or portion of any room or building, or occupy any place upon public or private grounds, anywhere within the State, with apparatus, books or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools, and any person who shall record or register bets or wagers, or sell pools, upon the result of any trial or contest of skill, speed or power of endurance *of man or beast* * * * or being the owner, lessee or occupant of any such room, building or part or portion thereof, shall knowingly permit the same to be used or occupied for any of the purposes aforesaid * * * shall be deemed guilty of a misdemeanor." It appears from the affidavits read on the part of the defendants, that there were in Madison Square Garden eight or ten tables or stands for the purpose of book-making, and that behind each of said tables or stands were one or more individuals who presided over the stand; that hanging up behind each of said tables was a black board on which was inscribed the names of each of the contestants in such walking match, and the state of the current odds against each of said contestants, for the first and second places in the finish of said walking match respectively; that the state of such odds was constantly changing, and that on each of such changes the individual

behind the table, in front of the black board, erased on said board the figures showing the odds, and with a piece of chalk substituted new figures, representing the new odds; that individuals desiring to bet on the result of said walking match came up constantly to the said tables and asked the individuals in charge thereof for a ticket on one or more contestants, mentioning the current odds against such contestant or contestants; and that thereupon the individual in charge of the table took from a tin box on such table a printed ticket, substantially of the following description: " Name of bookmakers. $—— $—— against——." That thereupon the individual in charge of the table proceeded to fill in the blanks on the printed ticket, by inserting in the dollar blanks the figures representing the amount of the bet made or about to be made, and the odds at which such bet was made, further filling in the blank, after the printed word "against," the name of the contestant against whom such odds were given in the bet then made, or about to be made; that the individual desiring to bet thereupon deposited with the individual in charge of the table the sum he desired to bet, and received in return, at the hands of the individual in charge of the table, a ticket made out in the above described manner; that upon the making of the bet as above described, and the delivery of the ticket as above described, the individual in charge of the table, on delivering the ticket, recorded in a book kept by him for the purpose the substance of the inscription on such ticket. The plaintiff, in his moving papers, alleges that he has not sold or permitted to be sold, nor will he permit or suffer to be sold upon said premises during said match, any pools, nor will he keep or permit to be kept in or upon the premises aforesaid any device or apparatus for the purpose of registering bets or wagers, in violation of chapter 178 of the Laws of 1877, or any law of the state of New York; but he avers that the business of book-making has been publicly and openly carried on in the city and state of New York, without any concealment and without interference by the

police or civil authorities, and at every public meeting of every racing association, &c.; and I understand him to claim that book-making is a perfectly legitimate and lawful business in this state.

After examining the act of 1877, I am of the opinion that the plaintiff's position in this respect cannot be sustained. The appliances which were used during the walking match, and which are described in the defendant's affidavit, seem to me to come directly within the language of the statute. The tables, books, boxes and blackboards, may fairly be classed as "apparatus" and "paraphernalia," and the "books," as books for the purpose of recording or registering bets or wagers. The fact that book-making has heretofore been publicly permitted, cannot of course have any weight as against the express language of the legislature, and I think that the plaintiff is not entitled therefore to the injunction which he seeks.

In the recent case of *Haley* agt. *Creidge* (*reported in the Daily Register, March* 11, 1882), before Mr. justice McADAM of the marine court, it was held that book-making was only another name for gambling; and that all contracts made in furtherance of bets and wagers were illegal and void, and that no recovery could be had upon them in a court of justice. In that case the plaintiff sued the defendant to recover a sum of money, for services rendered in going on the race course and ascertaining, from the owners and others, the condition of the horses about to enter upon the race, so that the defendant might regulate his book and his betting upon the result. I entirely concur with the learned justice in the views which he expressed in that case, and think that if there is any difference between the case at bar, and the case before him, the case at bar presents a stronger violation of the statute.

Entertaining these views, I might stop here; but I deem it proper to add, as already intimated, that even if the plaintiff was engaged in a proper and lawful calling, as the remedy which he invokes is an injunction to prevent his arrest, or the arrest of his employees, such a remedy should not be accorded

to him, because an injunction does not lie merely to restrain an illegal arrest.

In the case of *Birch* agt. *Cavanaugh* (12 *Abb.* [*N. S.*], 410, 418) the general term of the third department held, than an injunction would not lie merely to restrain an illegal arrest, and that a citizen could not maintain an action to restrain aldermen of the city from acting as the common council, even where the acts sought to be enjoined include the arrest of the plaintiff. In that case the plaintiff and nine others of the members of the common council of the city of Albany brought an action against Cavanaugh and eight others, three of whom were the city marshal and his assistants, and the others were the remaining members of the board of common council. The object of the action was to enjoin the latter from assum· ing to act as the minority of the common council, and to enjoin the marshal and his assistants from executing their order to arrest the plaintiffs, and bring them in to an alleged meeting of the common council held by the minority. LEARNED, J., in delivering the opinion of the court, says: " I am not aware that injunctions are granted to restrain threatened arrests, and this is for a very good reason. If the person is illegally arrested, he has the prompt and efficacious relief by *habeas corpus,* and he has also redress from the wrong by an action of damages. Injury by an illegal arrest is not of such an irreparable nature that it cannot be compensated in damages. It is true that injunctions are sometimes granted where other remedies exist ; but generally those are cases where the other remedy would be inadequate, not where, as in this case, the other remedy is ample. No authority was produced on the argument for an injunction to restrain threatened injury to the person."

It seems therefore, to me, conclusively to follow, that even if book-making is not a violation of the statute, the plaintiff is not entitled to a continuance of his injunction.

The motion to continue the injunction is denied, and the temporary injunction is vacated, with ten dollars costs.