THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRANK MORANO AND SIX OTHERS, PLAINTIFFS IN ERROR.

Submitted October 2, 1945—Decided December 6, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and OLIPHANT.

For the plaintiffs in error, *Frederic M. P. Pearse* and *Julius Lichtenstein*.

For the state, *Walter D. Van Riper,* Attorney-General, and *James R. Giuliano* and *William P. Gannon,* Deputy Attorneys-General.

The opinion of the court was delivered by

PARKER, J. The plaintiffs in error, seven in number, were convicted of a violation of the statute now to be cited as *R. S.* 2:135–3, dating from 1894 (*Pamph. L., p.* 155) and re-

enacted with additions in the Crimes Act of 1898 (*Pamph. L.*, at *p.* 812) as section 65. The present writ of error brings up that conviction.

The general story of the case is that a detail of state police raided a house in Hoboken, entered an upper room equipped with telegraphic and other appliances which were being operated by the defendants in connection with horse racing in progress elsewhere, arrested them and seized their various paraphernalia. Indictment and trial followed, the defendants offered no evidence and were convicted and sentenced. The present writ of error goes to that conviction.

The case is submitted on briefs without oral argument. There are six main heads in the brief, but as we view the matter they need not be treated *seriatim;* for with the exception of one or two matters of detail, the general discussion covers them all. The fundamental proposition of plaintiffs in error attacks the validity of the indictment, and several grounds are stated, viz.: that (1) it fails generally to charge a crime: (2) that it fails to charge a crime under the statute: (3) fails to charge where the horse racing took place: and (4) generally fails to set out facts constituting violation of the statute with sufficient clearness.

1. 2. The indictment follows the language of the statute, and concludes by invoking it in the usual manner. 3. The main ground of attack seems to be the failure to charge where the horse racing took place: but the obvious and complete answer is that that is immaterial. It is not the racing of horses that the statute denounces, but it is the "making of a book" on such racing. The charge is that defendants "made a book" in the City of Hoboken, on the result of races run or to be run elsewhere.

4. Failure to state the facts with sufficient clearness. The indictment follows the language of the statute, properly substituting "and" for "or," (the statute says "make *or* take :" the indictment says "make and take"), which is the proper and usual pleading in a criminal case.

It is argued that there was no evidence in definition of the words "making a book" or "bookmaking." No such evidence was required. We find the word adequately defined in the

Webster International ("Specifically, the making of a betting book"). Certain New York cases are cited: but it is properly pointed out that the New York statute and code are different from ours. Our statute says (2:135–3) "or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this State, of any horse, mare or gelding," &c. The statutory language, not here quoted in full, is comprehensive; and as already pointed out, is faithfully followed in the indictment. The statute itself dates from 1898, and is in line with the amendment of paragraph 2, section VII of article IV of the constitution proposed by the legislature in May, 1897 (*Pamph. L.* 1897, at *p.* 462) adopted at a special election September 28th, 1897, and proclaimed by the governor October 26th, 1897 (*Pamph. L.* 1898, at *p.* 973). The language of that amendment reads in part "nor shall pool-selling, *bookmaking* or gambling of any kind be authorized or allowed within 'this State, nor shall any gambling device, practice or game of chance now prohibited by law be legalized, or the remedy, penalty, or punishment now provided therefor be in any way diminished." Applying the familiar maxim of *"noscitur a sociis,"* the meaning of the word "bookmaking" seems clear, and requires no explanation or definition, or particulars in the language of the indictment. If defendants were entitled to particulars of the accusation, they could have applied to the court for a bill of particulars. *Bishop New Crim. Procedure,* § 643; *State* v. *Hatfield,* 66 *N. J. L.* 443; *affirmed,* 67 *Id.* 354; *State* v. *Pennsylvania Railroad Co.,* 84 *Id.* 550, 553. As regards the locality, within or without this state, where the "running of horses," &c., took place, that is clearly immaterial. The gist of the offense is bookmaking bets on such running, and it is the locality of the bookmaking that matters. If the horses ran in California, and the "bookmaking" took place in Hudson County, New Jersey, the statute was violated.

The foregoing considerations dispose, we think, of the challenges to (1) the admission of exhibits, (2) refusal to direct an acquittal, or (3) refusal to arrest the judgment. As to the charge, we consider that it was lucid and accurate. The

brief asserts in general terms that there was error in refusing some eight requests to charge, none of which is specifically treated or even reproduced in the brief; and, as already noted, there was no oral argument. It is elementary that a reviewing court is not required to search for error not pointed out at the argument or in the brief: *A. Makray, Inc.*, v. *McCullough*, 103 *N. J. L.* 346: and the absence of any such specification may well justify the inference that counsel themselves discern no error.

Point IV in the brief relates to an individual defendant named Lewis, who was not present at the time of the raid. Lewis was shown to be, and admitted that he was, in substance a permanent resident of the house on the fourth floor of which was the room containing many telephone and other appliances used in the "bookmaking" business, and that beside his bed in a second floor room was a table holding a telephone directly connected with the so-called "wire room," and in the "wire room" were found documents with his name therein. While it may be claimed that the evidence tending to connect him with the "bookmaking" was somewhat scanty, there was enough to require the submission thereof to the jury.

The fifth point, claiming error in the court's refusal to direct an acquittal of all the defendants, seems to be frivolous. There was proper proof that all, substantially in concert, were engaged in this illegal business. That was enough to bar a directed acquittal.

Lastly, there is a general claim of error in the receipt of testimony and admission of exhibits, amounting as claimed, to "manifest wrong and injury," in the language of the statute. Our examination fails to satisfy us of the commission of any such error.

The judgment of the Sessions under review is affirmed.