18 N.J. Super. 478 (1952)
87 A.2d 543
STATE OF NEW JERSEY, RESPONDENT,
v.
BEN MARANZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 1952.
Decided March 24, 1952.
Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. James L. McKenna argued the cause for the appellant.
Mr. Richard J. Congleton, Essex County Prosecutor, argued the cause for the respondent (Mr. C. William Caruso on the brief).
*479 The opinion of the court was delivered by JACOBS, S.J.A.D.
The defendant was indicted on the charge that he willfully and unlawfully conducted the practice of bookmaking on the results of sporting contests, to wit, basketball games and prize fights, in violation of R.S. 2:135-3. He was tried, convicted, and sentenced and has duly appealed. In support of his appeal he does not question the sufficiency of the evidence against him but raises the single contention that although bookmaking on horse races is an admittedly indictable offense under R.S. 2:135-3 (State v. Morano, 134 N.J.L. 295 (E. & A. 1946)), bookmaking on other contests, such as basketball games and prize fights, is not.
In 1893 the Legislature declared that any one who, within the exterior enclosure of the grounds of any race course, practiced betting on horse races, commonly known as bookmaking, was guilty of a misdemeanor. See L. 1893, c. 18. During the following year this enactment was repealed (L. 1894, c. 12) and was replaced by a statute (L. 1894, c. 101) which dealt more generally with gambling. In its first section it declared that if any person shall buy or sell what is commonly known as a pool or interest therein, or make or take "what is commonly known as a book, upon the running, pacing or trotting, either within or without this State, of any horse, mare or gelding," he shall be guilty of a misdemeanor. In its second section it declared that if any person shall "conduct the practices commonly known as book making and pool selling" or keep a place to which persons may resort for such practices or for betting on "any horse race, or other race or contest" or for "gambling in any form" he shall be guilty of a misdemeanor. It may here be noted that the first section which dealt with the making or taking of "what is commonly known as a book" was expressly restricted to books on horse races, but there was no comparable restrictive language in the second section which dealt with the practice commonly known as bookmaking. In 1897 a constitutional amendment prohibiting "book-making *480 or gambling of any kind" (art. IV, sec. VII, par. 2) was adopted and thereafter, in L. 1898, c. 235, the Legislature substantially reenacted the provisions of L. 1894, c. 101 which now appear in R.S. 2:135-3.
The State and the defendant agree that the clause in R.S. 2:135-3 which deals with any person who makes or takes what is commonly known as a book upon horse races is inapplicable in the instant matter. The State contends, however, that the independent clause in R.S. 2:135-3 which deals with any person who shall conduct the practice commonly known as bookmaking is applicable and that the defendant's indictment and conviction were proper thereunder. In response the defendant urges that although the pertinent statutory language is general and not expressly restricted to horse races, it should be so limited in the light of its historical antecedents, particularly L. 1893, c. 18. It is true, as the defendant points out, that the 1893 enactment referred to the practice of betting on horse races "commonly known as book making"; however, since the Legislature there dealt only with at-the-track betting on horse races it had no occasion to refer to betting on other contests and it did not in anywise suggest that the making of betting book on contests other than horse races was not also then commonly known as bookmaking. Indeed, examination of contemporary dictionary definitions and judicial decisions adequately discloses the contrary. Cf. State v. Morano, supra, at p. 297; Eastwood v. Miller (1874), L.R. 9 Q.B. 440; Murphy v. The Board of Police, 63 How. Prac. 396 (Sup. Ct. 1882). In the Morano case Justice Heher referred to early dictionary definitions which defined bookmaking as "The act or practice of making a book on a race or other doubtful event," and a bookmaker as "One who makes a book on a race or other doubtful event; a professional betting man." Similarly, the Oxford English Dictionary (1888) defined a book as "A betting book; a record of a number of bets made with different people, generally kept in a memorandum book"; a bookmaker as "A professional *481 betting man"; and bookmaking as "The making of a betting book." In the Eastwood case which was decided in 1874 persons who were engaged in the practice of taking bets on foot races and pigeon shooting matches were described as bookmakers, and in the Murphy case the practice of taking bets on foot races was referred to as bookmaking.
In the light of the foregoing we are satisfied that when the Legislature repealed the limited 1893 enactment and replaced it with the broad provisions of L. 1894, c. 101, it contemplated that the practice of bookmaking would constitute a misdemeanor whether it be on horse races or other contests. At that time, all betting upon horse races or other contests was against the policy of our law (see R.S. 2:57-1; Haring v. State, 51 N.J.L. 386, 387 (Sup. Ct. 1889), affirmed 53 N.J.L. 664 (E. & A. 1891)), and it may properly be said that L. 1894, c. 101 implemented this policy by declaring, in effect and among other matters, that the practice of bookmaking on horse races or other contests constituted a misdemeanor, punishable as such. Apart from wagers made at authorized pari-mutuel race tracks the policy of our law against betting has remained the same, and its current broad implementation is found, along with other pertinent enactments, in R.S. 2:135-3. See N.J.S. 2A:112-3.
The defendant contends that the opinion of the Court of Errors and Appeals in State v. Morano, supra, lends support for his position that the pertinent clause in R.S. 2:135-3 governs bookmaking on horse races only. There Morano had not been indicted or convicted of conducting the practice commonly known as bookmaking; he had been indicted and convicted of making and taking "what is commonly known as a book, upon the running of horses, mares and geldings," and had contended that since he took off-track bets at pari-mutuel odds established at an authorized race track, a procedure unknown when the legislation was enacted, he could not be guilty of making and taking what was commonly known as a book. The court readily rejected this contention, but in the course of its opinion made the following remark relied upon by the defendant:
*482 "Then, as now, `bookmaking,' in common understanding, signified the making of a book of bets  i.e. the making or taking and recording or registering of bets or wagers on races and kindred contests; and the particular statutory provision has ever since denounced the making or taking of a book on horse races only."
It appears to us that the particular statutory provision to which the court referred was the clause in R.S. 2:135-3 upon which Morano's indictment and conviction were based; that clause is by its terms expressly confined to the making or taking of a book on horse races only. In the instant matter the independent clause upon which the defendant's indictment and conviction were based is not by its terms confined to bookmaking on horse races only and, as we have heretofore indicated, we are satisfied that in view of its clear purpose and comprehensive phraseology (see State v. Morano, 133 N.J.L. 428, 430 (Sup. Ct. 1945)) it must be construed to be applicable generally, as in reason it ought be, to the commonly known practice of bookmaking, whether it be on horse races, basketball games, prize fights or other events.
Affirmed.