23 N.J. Super. 531 (1952)
93 A.2d 398
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VICTOR BOGEN, DEFENDANT, AND SEYMOUR S. LIEBERMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1952.
Decided December 10, 1952.
*532 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. H. Russell Morss, Jr., argued the cause for the plaintiff-respondent (Mr. Edward Cohn, attorney).
Mr. Eugene A. Liotta argued the cause for the defendant-appellant.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
In this appeal from his conviction for "bookmaking" the defendant contends that the court erred in denying his motion for dismissal of the indictment at the close of the State's case; that there was *533 no proof that Lieberman was engaged in "bookmaking" contrary to R.S. 2:135-3; that the essence of the offense charged is repeated or habitual acts and that the evidence proved but one act of making and recording horse bets.
Victor Bogen, father-in-law of the defendant, was the owner of a candy and cigar store in the Township of Cranford. John W. Zalinsky, a witness for the State, testified that on March 26, 1951 he went to Bogen's store and made horse bets of $10 with the defendant Seymour S. Lieberman; that he made a duplicate slip, gave one to Lieberman and kept one himself. Thereafter, on the same day, Officer Rosendale arrested Zalinsky, searched him and found a slip. He questioned Zalinsky and then proceeded to Bogen's store accompanied by Officer Crissey and arrested Lieberman. Officer Rosendale found a $10 bill and a slip identical to Zalinsky's in the possession of Lieberman. Officer Crissey and another eye-witness corroborated Officer Rosendale's testimony.
At the close of the State's case the court granted the motion of the defendant Victor Bogen for a dismissal, and denied a like application of the defendant Lieberman. The renewal of Lieberman's motion for a directed verdict of acquittal was similarly denied.
The primary issue for determination in this matter is what constitutes bookmaking within the intendment of the statute, i.e., whether it is requisite that there be repeated acts or habitual acts of making book to be considered a violation of R.S. 2:135-3, or whether a single act of bookmaking is sufficient to constitute a violation thereof.
R.S. 2:135-3 provides, inter alia:
"Any person who shall habitually or otherwise, buy or sell what is commonly known as a pool, or any interest or share in any such pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this State, of any horse, mare or gelding, or shall conduct the practices commonly known as bookmaking or pool selling, or shall keep a place to which persons may resort for engaging in any such practices, or for betting upon the event of any horse race, or other race or contest, either *534 within or without this State, or for gambling in any form, or any person who shall aid, abet or assist in any such acts, shall be guilty of a misdemeanor, and punished by a fine of not less than one thousand dollars nor more than five thousand dollars, or by imprisonment in the State Prison for not less than one year nor more than five years. * * *" (Italics ours.)
Defendant Lieberman contends that the statute contemplates repeated acts; that it is necessary to prove that a series of incidents occurred, and that an isolated instance of making or taking and recording bets or wagers is insufficient to constitute a violation of the aforementioned statute.
In the case of State v. Morano, 133 N.J.L. 428 (Sup. Ct. 1945), affirmed 134 N.J.L. 295, 299 (E. & A. 1946), our former Court of Errors and Appeals stated that the term "`bookmaking,' in common understanding, signified the making of a book of bets  i.e., the making or taking and recording or registering of bets or wagers on races and kindred contests; * * *." There is in that definition no requirement of multiplicity of acts. In fact, it refers specifically to "a book," not a series of repetitious occurrences. As stated in the Morano case, it was the making of a book of bets that was denounced, not a degree of error beyond which the acts assumed the character of legal wrong as being colored with progressive shades of gray deepening into a blackened sin against society in direct proportion to the number of incidents.
The plain language of the statute itself indicates that one becomes a misdemeanant in either of two ways  doing the prohibited acts "habitually or otherwise," "otherwise" being opposed to habitually, or not out of habit, or acts not serial in nature. "Habitually" and "otherwise" are in juxtaposition with antithetic effect. The alternative would plainly appear to provide for single incidents, as well as repetitious acts. Furthermore, it must be remembered it is the verb "making" which is the key to the offense, not the object "bets" which defines the illegal activity. It is the act *535 (making of a book of bets) which is denounced as a single or repetitious transaction. See State v. Clark, 137 N.J.L. 10 (Sup. Ct. 1948), affirmed Ibid. 614 (E. & A. 1948).
In the concurring opinion of Mr. Justice Case in State v. Lennon, 3 N.J. 337, 345 (1949), our view finds support, to wit:
"* * * It is clear that bookmaking is an act which must be done in concert, that is, there must be the bookmaker who takes the bet and also the bettor who places the bet, and that the statutory offense is visited upon the bookmaker and those who assist him and not upon the bettor. It is a substantive statutory offense, with penalty, to make a book and take bets; it is not a substantive statutory offense, * * *." (Italics ours.)
While the State, in its evidence, relied upon one transaction as proof of the commission of the crime, it is clear that Zalinsky on the date in question placed with Lieberman bets on eight separate races, and a notation thereof and money covering the bets were left with Lieberman by the bettor Zalinsky. This we construe to be bookmaking within the intendment of the statute. The fact that there is only one slip recording the transaction and that it was in the handwriting of Zalinsky, the bettor, is of no material importance. The slip was a recording of a bookmaking transaction within the words and intent of the statute and was accepted as such by Lieberman as the bookmaker.
To adopt defendant's contention would be to hold that if a bookmaker were starting business for the first time and upon arrest there was found in his possession only one bookmaking transaction, he would then not be in violation of the statute; that he must have become established long enough to have developed a trade and that the State must prove a series of day-to-day bookmaking charges to present a case of statutory wrongdoing. This we do not perceive to be the intendment of the statute, for we are not concerned with the wrongdoer's prosperity or the volume of his business. It is any single act of bookmaking which violates the proscription of the statute.
*536 Defendant applied unsuccessfully for a new trial on the grounds that the verdict was contrary to the weight of the evidence; that the verdict was the result of mistake, passion, prejudice, bias or sympathy, and that the prosecutor in his summation to the jury went beyond the scope of the facts in the case to induce bias and prejudice against the defendant.
When the defendant Lieberman took the witness stand and testified in his own behalf, his counsel attempted to elicit testimony as to his family, which the court excluded as irrelevant. After a further attempt to get this testimony in, the trial court criticized counsel for ignoring its prior ruling. Defendant now asserts that this action of the trial court was error and prejudicial to his case. This is not a meritorious contention. Not only did defendant's counsel make no objection to the court's criticism, but, in fact, apologized to the court.
Defendant alleges that the prosecutor in his summation to the jury improperly referred to the Kefauver investigation and the reputation of an embezzler from Perth Amboy, to wit:
"(During the course of his summation, Mr. Sellers stated: ` and we had the Kefauver investigation.')
Mr. Liotta: I object to this and I submit that his remarks are unwarranted.
Mr. Sellers: I believe I have a right to comment upon public events.
Mr. Liotta: We are not interested in the Kefauver investigation.
The Court: He is merely commenting on the weight that should be given character witnesses.
Mr. Liotta: But the fact is that he has come out with something that happened in the Kefauver investigation.
The Court: I don't know what he said about that.
Confine your argument to the points relative to the evidence received.
Mr. Sellers: I was attacking the character witnesses, that is the reason I referred to the Kefauver investigation and no other reason.
The Court: There is no evidence what these witnesses did in the Kefauver investigation.
Mr. Liotta: He also brought out the fact that there was a banker in Perth Amboy that had the finest reputation, but that has nothing to do with this case.
*537 The Court: I will agree with you.
Mr. Sellers: I will withdraw that, and I am sorry. I apologize.
Mr. Liotta: If the Court please, I move for mistrial because the damage has been done.
The Court: I will deny your motion and order the jury to disregard the remarks about the banker in Perth Amboy and any investigation conducted by Senator Kefauver. Confine your argument to the material facts in this case."
The defendant argues that the remarks of the prosecutor were beyond the facts of the case and calculated to excite bias and prejudice in the jury and, therefore, the trial court should have granted defendant's motion for a new trial.
We are in accord with the generally accepted principle that remarks on summation should be confined to the facts of the particular case. Danner v. Kennedy, 111 N.J.L. 328 (E. & A. 1933). Where, as here, the court properly admonished the State's counsel and instructed the jury to disregard the objectionable remarks, we are of the opinion that the court performed its duty. Danner v. Kennedy, supra. Cf. State v. Terry, 91 N.J.L. 539 (E. & A. 1918).
At another point in his summation the prosecutor stated:
"* * * Another thing, it is legal to bet in New Jersey at the legal race track, where the bets are carefully checked and the odds are figured after breakage and after the State gets a cut and the track gets a cut. What odds do these fellows pay? They take more than Monmouth Park, and they do not even play square with the bettor."
Defense counsel objected to the aforementioned statement, which objection was sustained by the court with the following comment:
"There is no evidence that the bookmakers do not play square with the bettors. I don't know what the odds are. They may be more than the pari-mutuel pay, but there is no evidence as to that. Proceed and confine your summation to the evidence."
Again, we think the court performed its duty. Danner v. Kennedy, supra. Thereafter, the prosecutor concluded his summation with the following statement:
*538 "I leave it entirely to you. I live in Union County, and you know what goes on. You read the papers, and you know what goes on. It is entirely up to the people. I leave the case for you to decide. Thank you."
To which no objection was interposed by the defendant.
At the conclusion of the court's charge, it observed: "I have some requests to charge by the defendant, but I have already included them." To which defense counsel replied: "You have already charged them, your honor." Except for two items not concerning this appeal, no objection was made to the court's charge.
Our examination of the alleged errors does not, in our opinion, result in any manifest injustice to the defendant under the circumstances of this case. See Slovak Catholic Sokol v. Foti, 13 N.J. Super. 458, 460 (App. Div. 1951); State v. Taylor, 5 N.J. 474, 480 (1950); State v. Morriggi, 15 N.J. Super. 479, 481 (App. Div. 1951). However, in passing, we do not think that the apparent zeal and enthusiasm of counsel for the State to impress the jury with the righteousness of the State's case, justifies the objectionable remarks made by him, inasmuch as they were entirely outside of the record.
We find no abuse of discretion constituting judicial error in the court's denial of defendant's motions for a dismissal of the charges at the end of the State's case and for a directed verdict of acquittal at the close of the entire case. The record discloses that there was sufficient competent evidence to justify submitting the case to the jury and to sustain its verdict of guilty. State v. Nolan, 1 N.J. Super. 280, 281 (App. Div. 1949); State v. Gooze, 14 N.J. Super. 277 (App. Div. 1951); State v. Narushef, 15 N.J. Super. 483, 489-492 (App. Div. 1951), certif. denied 8 N.J. 412 (1952).
Further, we find no error in the trial court's action in refusing to grant defendant's application for a new trial. As stated in Sokol v. Liebstein, 9 N.J. 93, 99-100 (1952):
*539 "* * * A motion for a new trial is addressed to the sound discretion of the trial judge to be exercised with a view to the manifest rights of the parties and the prevention of injustice and oppression under all the circumstances of the case. The exercise of this discretion will be interfered with by an appellate tribunal only when the action of the trial court constituted a clear abuse of that discretion. Hawthorne v. Jowett, 121 N.J.L. 38, 39 (E. & A. 1938); Heinz v. Atlantic Stages, Inc., 113 N.J.L. 321, 325 (E. & A. 1934). The exercise of discretion implies conscientious judgment taking into account the law and the particular circumstances of the case and is directed by reason and conscience of the judge to a just result. Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 262-263 (1949); Hoffman v. Maloratsky, 112 N.J. Eq. 333, 335 (E. & A. 1933)."
Cf. Panko v. Flintkote Co., 7 N.J. 55 (1951).
The judgment of the Union County Court is affirmed.