97 N.J. Super. 28 (1967)
234 A.2d 236
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD J. JULIANO AND PETER A. MEROLA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1967.
Decided September 28, 1967.
*30 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Michael A. Querques argued the cause for appellants (Messrs. Querques & Isles, attorneys).
Mr. James R. Zazzali, Jr., Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendants Donald J. Juliano and Peter A. Merola appeal from their convictions for violation of N.J.S. 2A:121-3 (possession of lottery slips) and N.J.S. 2A:112-3 (bookmaking).
The Essex County prosecutor's office received an anonymous telephone call to the effect that horse racing bets were being received from a certain phone number which was traced to the apartment of one Ida Goldberg at 425 Mt. Prospect Avenue, Newark. On June 21, 1965 Detective Richard Roberts of the prosecutor's office proceeded to that address and while standing in the hallway outside the Goldberg apartment for about ten minutes heard a male voice apparently speaking over the telephone. In his subsequent affidavit to obtain a search warrant he stated that:
"I repeatedly heard numbers mentioned, such as 1 and 2, 5th and 7th, That's $2.00? At one time I heard him say, That's a $60. parley [sic] right? I also heard the rattling of papers."
Armed with a search warrant, Roberts and a Lieutenant Dougherty proceeded to the premises on the following day. They sought out the wife of the superintendent of the building *31 and prevailed upon her to ring the bell of the Goldberg apartment and say that there was a package for Mrs. Goldberg. When she did so the door was opened by Merola and Dougherty and Roberts pushed it open further and entered the apartment. Dougherty had the search warrant in his hand and identified himself as he entered. They were followed by a number of additional officers.
Upon entering the apartment they observed Juliano alongside a table upon which were found a telephone, two Armstrong Daily "scratch sheets," sheets of paper containing writings identified as horse racing, lottery and baseball bets and $25 in cash. The telephone was equipped with a "soft chime," a device which, according to the police testimony, was favored by bookmakers because its ring could not be heard outside its immediate location. On a closet shelf the officers found a canvas bag containing Armstrong Daily editions for seven days prior to the day of the search, each of which contained slips representing horse and baseball bets for that day. While in the apartment Roberts answered several calls from would-be betting patrons, some of whom asked for "Don."
In addition to being indicted for possession of lottery slips, defendants were indicted on 16 separate counts for bookmaking, one count for each of the eight days on which there was evidence of horse racing bets and one count for each day on which there was evidence of baseball bets.
Defendants' motion to suppress the evidence seized in the raid on the ground that the search of the premises was in violation of their Fourth Amendment rights was denied, as was their motion for leave to appeal from such denial. At the trial the evidence seized was admitted over their objection.
Defendants first urge that the search warrant was defective by reason of the insufficiency of Roberts' supporting affidavit. We disagree. The verifying observations made by Roberts following receipt of the tip by the prosecutor's office constituted sufficient probable cause for the issuance of the search warrant. Cf. State v. Contursi, 44 N.J. 422, 430-432 *32 (1965). The conversation which he overheard was indicative of illegal gambling in the apartment. State v. O'Donnell, 8 N.J. Super. 13 (App. Div. 1950). The cases cited by the defendants on this point are clearly distinguishable.
Defendants next urge that the search itself was illegal because the officers obtained entry by a combination of ruse and force. It is conceded that prior to the opening of the door the officers made no demand for admission or any announcement of their identity or purpose. We hold that, considering the nature of the offense and the exigencies of the situation, the cited omissions did not render the search constitutionally invalid. Since the officers had probable cause for a belief that gambling activities were being carried on in the apartment, it was not unreasonable for them to believe, as one of them testified, that a preliminary statement identifying them and requesting admission to the apartment would have resulted in the destruction, elimination or secretion of at least some incriminating evidence. State v. Smith, 37 N.J. 481, 497-500 (1962); State v. Doyle, 42 N.J. 334, 345 (1964); State v. Fair, 45 N.J. 77, 86 (1965); State v. Miller, 47 N.J. 273, 280-282 (1966).
We have considered defendants' contentions that certain trial rulings were prejudicially erroneous and find them to be without merit. The interrogation of Roberts on redirect as to what he had overheard while outside the apartment on the day before the raid was properly allowed. The only objection was that the question went beyond the limits of the cross-examination and the trial judge properly ruled that counsel for defendants had "opened the door" to such testimony. Permitting Dougherty to testify that defendants had stood mute when he asked "which one of them was Goldberg" entailed no violation of their rights under the Fifth and Sixth Amendments as detailed in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nor was it error to exclude certain proffered testimony by defendants' witness Salvatore. Its exclusion did not amount to an abuse of discretion and we are not persuaded *33 that defendants thereby suffered any manifest injury or wrong. R.R. 1:5-1 (a); R.R. 2:5; State v. Yedwab, 43 N.J. Super. 367, 375 (App. Div. 1957), certification denied 23 N.J. 550 (1957). Likewise, the questions put to defendant Juliano by the trial judge were proper and involved no abuse of discretion. State v. Riley, 28 N.J. 188, 200 (1958); State v. Manno, 29 N.J. Super. 411, 417 (App. Div. 1954). Compare State v. Guido, 40 N.J. 191, 208 (1963).
Defendants' final point challenges the multiplication of the indictment for bookmaking into 16 separate counts. In substance, they argue that the statute, N.J.S. 2A:112-3, contemplates but one offense of a continuous nature, and that where the charge is taking bets on the outcome of horse races and baseball games there is but one offense on any one day, for which only one indictment will lie. The State urges that R.R. 3:5-5(b)(2) requires that this attack on the indictment be raised prior to trial and, in any event, that failure to call it to the attention of the trial court precluded its consideration. Without passing upon these objections we hold that the issue is of sufficient importance to justify our relaxation of the rules to permit its consideration. R.R. 1:27A; cf. In re Schmidt, 46 N.J. Super. 369, 375-376 (App. Div. 1957).
The statute provides as follows:

"2A:112-3. Bookmaking and pool selling; keeping gambling resort; pari-mutuel betting at race meetings excepted
Any person who, habitually or otherwise, buys or sells what is commonly known as a pool, or any interest or share therein, or makes or takes what is commonly known as a book, upon the running, pacing or trotting, either within or without this state, of any horse, mare or gelding, or conducts the practices commonly known as bookmaking or pool selling, or keeps a place to which people may resort for engaging in any such practices, or for betting upon the event of any horse race or other race or contest, either within or without this state, or for gambling in any form, is guilty of a misdemeanor * * *."
In State v. Hogan, 20 N.J. Super. 1, 6 (App. Div. 1952) it was held that bookmaking, as similarly defined in R.S. *34 2:135-3, was an offense which implied a continuity of operation or noninstantaneous act. However, the statute applies to those who "habitually or otherwise" violate it, and a single bookmaking transaction has been held to constitute a violation. State v. Bogen, 23 N.J. Super. 531, 535 (App. Div. 1952), affirmed 13 N.J. 137 (1953); cf. State v. Morano, 133 N.J.L. 428 (Sup. Ct. 1945), affirmed 134 N.J.L. 295 (E. & A. 1946). Since there was evidence here of bookmaking transactions on eight different dates, it was proper to include in the indictment separate counts for each day the statute was violated. Cf. State v. Rullis, 79 N.J. Super. 221, 225 (App. Div. 1963); State v. Thompson, 56 N.J. Super. 464 (App. Div. 1959).
On the issue of whether duplication of offenses is allowable on the theory that each type of bookmaking justifies a separate count in the indictment, we hold that it does not and that such separate counts are unnecessarily duplicitous. The statute itself sounds in the disjunctive, i.e., its violation may consist of acts of bookmaking on either horse racing or any other contest. State v. Maranz, 18 N.J. Super. 478, 482 (App. Div. 1952). As was said in State v. Bove, 98 N.J.L. 350 (Sup. Ct. 1923), affirmed 98 N.J.L. 576 (E. & A. 1923):
"The rule of alleging conjunctively the disjunctive variations or phases of a statutory crime is well established. State v. Hill, 73 N.J. Law 77, 78 [(1906)]. There may be cases where offences disjunctively set out in a statute are so dissimilar in substance that a separate count for each may be necessary. In Larison v. State, 49 N.J. Law 256 [(S.Ct. 1887)], this condition was said to exist. But this was obiter dictum, the decision turning on the proposition that, in any event, the point was not taken in time. Assuming the correctness of the doctrine intimated in that case, we think its application should be rather carefully limited and not extended." (at pp. 353-354)
Where, as here, violation of the statute involved the taking of bets on more than one type of event a separate indictment or count will not lie for each type of event involved.
*35 The convictions of defendants on counts 2, 4, 6, 8, 10, 12, 14 and 16 of the indictment for violation of N.J.S. 2A:112-3 are therefore reversed. In all other respects the convictions before us are affirmed.