THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DONALD J. JULIANO AND PETER A. MEROLA, DEFENDANTS-RESPONDENTS.

Argued April 1, 1968—Decided July 1, 1968.

Mr. James R. Zazzali, Assistant Prosecutor of Essex County, argued the cause for plaintiff-appellant (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney; Mr. Barry H. Evenchick, Assistant Prosecutor of Essex County, of counsel and on the brief).

Mr. Daniel E. Isles argued the cause for defendants-respondents (Messrs. Querques & Isles, attorneys; Mr. Michael A. Querques and Mr. Harvey Weissbard, of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J.   Defendants were tried by a jury on two indictments. The first contained one count charging defendants with possession of lottery slips. The second contained 16 separate counts for bookmaking, broken down into one count for each of the eight days on which there was evidence of horse racing bets and one count for taking baseball bets on each of those days.

Defendants were convicted on the possession charge and on 15 bookmaking counts. (The 16th bookmaking count, charging the taking of baseball bets on June 22, 1965, was dismissed by the trial court.) On one of the remaining 15 bookmaking counts, the trial court imposed upon each defendant a sentence of 1–3 years and a $2,000 fine. As to the other 14 bookmaking counts, the trial court suspended imposition of sentences. *N. J. S.* 2A :168–1. On the first count, possession of lottery slips, the trial court imposed upon each defendant a sentence of 1–3 years to run concurrently with the bookmaking sentences.

On appeal, the Appellate Division, although sustaining the jury verdict, held that the inclusion of separate counts for two types of bets was "unnecessarily duplicitous." 97 *N. J. Super.* 28 (*App. Div.* 1967). It therefore reversed the eight convictions for bookmaking on baseball games.

We granted the State's petition for certification. 50 *N. J.* 408 (1967).[1]

The question is whether *N. J. S.* 2A :112–3 permitted convictions both for bookmaking on horse races and for bookmaking on baseball games. The issue of multiple statutory

---

[1] We also directed the parties to argue the question of "whether each day of bookmaking constitutes a separate crime." 50 *N. J.* 408 (1967). However, upon consideration of the question, we find it unnecessary to disturb the decision of the Appellate Division that *N. J. S.* 2A :112–3 permits prosecution for separate days of bookmaking. *State v. Bogen,* 13 *N. J.* 137, 139 (1953). We need not say whether more than one offense may be found in a single day's bookmaking on one type of sporting event.

offenses may properly be viewed in this instance as one of statutory interpretation. *Gore v. United States, 357 U. S. 386, 78 S. Ct. 1280, 2 L. Ed. 2d 1405* (1958); Note, 65 *Yale L. J.* 339, 363–64 (1956). The statute provides:

"Any person who, habitually or otherwise, buys or sells what is commonly known as a pool, or any intesest or share therein, or makes or takes what is commonly known as a book, upon the running, pacing or trotting, either within or without this state, of any horse, mare or gelding, or conducts the practices commonly known as bookmaking or pool selling, or keeps a place to which persons may resort for engaging in any such practices, or for betting upon the event of any horse race or other race or contest, either within or without this state, or for gambling in any form, is guilty of a misdemeanor, and shall be punished by a fine of not less than $1,000 nor more than $5,000, or by imprisonment in the state prison for not less than 1 year nor more than 5 years, or both."

There is no question that the Legislature could proscribe two or more separate and distinct criminal acts within the same statute. IV *Wharton's Criminal Law and Procedure,* § 1778, *p.* 630 (1957); *cf. R. S.* 24:18–4; *State v. McDonald,* 92 *N. J. Super.* 448 (*App. Div.* 1966). The Appellate Division concedes that *N. J. S. 2A*:112–3 is set forth in the disjunctive in that violations "may consist of acts of bookmaking on either horse racing or any other contest." 97 *N. J. Super.,* at *p.* 34. On that point there can be no dispute. *State v. Fiorello,* 36 *N. J.* 80 (1961), *certiorari* denied 368 *U. S.* 967, 82 *S. Ct.* 439, 7 *L. Ed. 2d* 396 (1962); *cf. State v. Mazzarella,* 236 *A. 2d* 446 (*R. I.* 1967).

We disagree, however, with the Appellate Division's further conclusion that where, as here, the violations involved the taking of bets on more than one type of event, a separate count would not lie for each type of conduct. The defendants engaged in two different types of bookmaking, each of which was proscribed and made punishable by *N. J. S. 2A*:112–3. The State must be allowed to proceed against defendants on the basis of the separate and distinct offenses set out by the Legislature.

Of course, judges must exercise careful, common sense discretion in imposing punishment for these multiple offenses in order to ensure that the pyramiding of sentences does not offend notions of fairness or cruel and unusual punishment. See generally *ABA Project on Minimum Standards for Criminal Justice,* "Standards Relating to Appellate Review of Sentences," § 3.4 (Tent. Draft, April 1967). In the case at hand, the imposition of a fine and concurrent 1–3 year sentences did not exceed a proper exercise of the discretion required. As the sentencing discretion was properly implemented here, we see no reason to disturb the determination of the trial court.

The judgment of the Appellate Division is modified and the judgment of the trial court reinstated.

PROCTOR, J., concurs in result.

PROCTOR, J. (concurring). I join in the reinstatement of the trial court's judgment of conviction. However, as I read this Court's opinion, a bookmaker would be guilty of but one offense if he, on the same day, engaged in several bookmaking transactions solely on horse races or solely on baseball games. Although in footnote one the majority purports not to decide this question, the foundation stone of the decision is the fact that "two different *types* of bookmaking" (emphasis added) were present. The Court states:

"We disagree, however, with the Appellate Division's further conclusion that *where, as here, the violations involved the taking of bets on more than one type of event,* a separate count would not lie for each type of conduct." (Emphasis added).

I fear this language will be read by law enforcement officers and trial judges to mean that the *sine qua non* for separate counts based on one day of bookmaking is the existence of bookmaking on more than one type of event. I cannot join in such a conclusion.

I would sustain the separate counts for baseball bets and horse racing bets not on the Court's basis that "[t]he defendants engaged in two different types of bookmaking, each of which was proscribed and made punishable by *N. J. S.* 2A:112–3" but on the ground that the acceptance of each bet was a distinct violation of the statute. This Court has held that a single betting transaction by a bookmaker constitutes a violation of *N. J. S.* 2A:112–3. *State v. Bogen,* 13 *N. J.* 137, 139 (1953), affirming 23 *N. J. Super.* 531 (*App. Div.* 1952). Thus, single acts of bookmaking may be the subject of separate counts whether the acts related to bets on different events or the same event. The Court refers to bookmaking on two different types of events as "separate and distinct offenses." But separate and distinct offenses would be involved in making a book of several separate and distinct bets, even though the bets were placed on the outcome of the same horse race or, indeed, on the performance of the same horse. Does the Court consider bets on races at Belmont Park and on races at Monmouth Park to be bets on the same type event? Is the racing of trotters the same type event as flat racing? Is a steeplechase the same type event as a six-furlong race? Is a professional football game the same type event as collegiate football? I doubt the Court is prepared to deal with these questions. In my view, a defendant twice would have violated the statute whether on the same day he took a bet on a horse race and another wager on a baseball game, or whether on that day he took two bets on the same event.

I also have difficulty with the limitation to a single day's activities apparently placed by the Court on bookmaking prosecutions. There is no basis, either in the statute or in the decisions, for what I believe to be an intimation by the Court that a day is the appropriate unit for measuring the number of bookmaking violations. The Court as easily might have chosen a week, an hour, or an afternoon of bookmaking as the smallest interval of crime which could be subject to a single count.

Although I would hold that each bookmaking transaction —whether on the same event or different events or on the same or different days—may be the subject of a separate count or indictment, I do not think it would be appropriate for a trial judge to sentence on each transaction separately without reference to the other counts or indictments. I am in agreement that the trial court's imposition of sentences in this case was proper.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.