146 N.J. Super. 565 (1977)
370 A.2d 486
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER LiBUTTI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1976.
Decided January 13, 1977.
*567 Before Judges MATTHEWS, SEIDMAN and HORN.
Messrs. Russell & McAlevy, attorneys for appellant (Mr. John P. Russell on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for respondent (Mr. Peter N. Gilbreth, Assistant Prosecutor, of counsel and on the brief).
*568 The opinion of the court was delivered by HORN, J.A.D.
Defendant Peter LiButti appeals his conviction of conspiracy (N.J.S.A. 2A:98-1 and 2) and arson (N.J.S.A. 2A:89-2) following a trial before a jury. A codefendant, August Napolitano, was acquitted on all counts.
On May 16, 1974 the Essex County grand jury indicted defendant along with Frank Basto and Robert Martin, charging that between July 7 and August 10, 1972 in the City of Newark (Essex County) and the City of Hoboken (Hudson County) said parties conspired among themselves and Gerard Charles Festa (unindicted) to burn a building at 301 Jackson Street, Hoboken, New Jersey. A second count charged the same defendants with having committed arson by burning said building. Basto pled guilty to the indictment. Charges against Martin were dismissed as part of a plea agreement involving other charges against him.
On May 1, 1975 an Essex County grand jury returned an indictment charging August Napolitano with being a conspirator in the same conspiracy related in the first indictment naming LiButti, with committing the same arson and in addition with defrauding insurance companies. On May 8, 1975 the indictments were consolidated for trial. As stated, Napolitano was acquitted of all charges contained in the indictment pertaining to him. LiButti was convicted of the conspiracy and arson.
Appellant cites three alleged errors: (1) the trial judge erred in failing to grant a change of venue to Hudson County; (2) he erred in denying the motion to disqualify himself, and (3) the verdict was against the weight of the evidence and a result of passion, mistake, partiality, prejudice and compromise. Under (2) defendant argues that during the trial the judge made statements and rulings which prejudiced defendant and resulted in an unfair trial. In addition, he permitted the prosecuting attorney, over objection, to perform a demonstration during summation which was not alone improper but also highly prejudicial *569 and in violation of defendant's constitutional right to confrontation and to cross-examination. We agree and reverse.
In view of our determination on this point, although we need not consider any of the other points raised, we will only add that we find no persuasive basis to hold that the judge should have disqualified himself. We will comment hereinafter as to the venue.
Festa, a witness for the State, had testified as to how the arson was perpetrated  that the several parties charged with the crimes poured gasoline, lacquer and paint thinner out of ten five-gallon containers all over the interior of the liquor store which was set on fire, and that all containers were the same size and shape. On cross-examination by LiButti's attorney a plastic container (later introduced in evidence by him as an exhibit) was identified by Festa as appearing to be the same as those used except that the one identified appeared to be more rectangular. He then demonstrated how the gasoline was poured from the containers.
A state expert in the investigation of suspicious fires testified that no plastic containers or remnants of those which had been used were ever found. Later defendants presented an expert who testified in their defense for the purpose of showing the unlikelihood of defendants having poured the flammable liquids under the circumstances charged by the State. This was sought to be achieved by showing the time it would take to pour the contents of each container as described and demonstrated by Festa. The expert opined:
They would never have lived to succeed to put all that around because in the process of applying it, it takes you a minimum of three minutes to pour and empty that size of container. I have them and used them. It takes you, sloshing it around five to ten minutes to do it because you're only letting it go out on the forward end of the throw and the rest of the time you're not spilling it.
The State produced no expert or other person to directly counter the testimony of defendants' expert (Von Ludwig) on this point. Instead, during his summation the trial prosecutor told the jury:
*570 But if their [defendants'] expert says that to turn this upside down and dump out the liquid takes three minutes, and he knows this from his own personal experience, O.K., Mr. Ludwig, let's find out.
* * * So let's find out if Mr. Von Ludwig is right * * * to dump a five gallon container of liquid, turning it over, would take three minutes.
I borrowed a pulsar watch."
When overruling the objection to the proposed experiment the judge said: "I'll allow it in contravention of the testimony given by Mr. Von Ludwig." Counsel again objected when it appeared that the prosecuting attorney was about to use for the experiment a container which had not been introduced in evidence, saying: "* * * [W]e have never seen this container before, we don't know if it has the same nozzle or spout * * *."
The exhibition consisted of the pouring of liquid, said to be water, from what appeared only from the statements of the prosecuting attorney to be a five-gallon container, into another receptacle. The prosecuting attorney had a detective stand by to call out when the five-gallon container was empty.
Finally, defendant's counsel objected on the ground there was no testimony "whatever liquid is in there is the weight of gasoline or liquid or thinner. * * *." This objection also was overruled.
Then the prosecuting attorney called out "30 seconds." A member of the jury then said: "27 seconds." The prosecuting attorney then said: "Let's make it 28. I'll settle for 28." Appellant's attorney said: "That's providing it was full in the first place."
After the colloquy the prosecutor continued with his summation, explaining how wrong Von Ludwig was, as follows:
Mr. Von Ludwig in his expert opinion, based on his own experiments, can state to a certainty, a scientific certainty, that to dump this container upside down and empty it of liquid takes three minutes.
Now, how wrong was Mr. Von Ludwig? Mr. Von Ludwig is 500% wrong. Now on the surface that seems wrong too, because *571 you would think that if 30 seconds on the one hand as opposed to 180 seconds on the other, it seems like it would be 600% wrong, but I tell you now, and you can check it if you are a mathematician or an actuary, Mr. Von Ludwig is not 600% wrong, he's only 500% wrong, or stated another way, it takes one-sixth of the time he says it would to do what we did. 500% wrong.
On the last day of the trial, while awaiting the jury's verdict, defendant's counsel said to the judge:
I would also like to augment what I requested last night * * * when the prosecutor made his demonstration before the jury in his summation with respect to the pouring of the water, your Honor, I noticed that during the demonstration, that the prosecutor used a certain kind of watch. I never saw the watch. I never had an opportunity to inspect it. There was some kind of a counting down of seconds. The prosecutor indicated it came to 27 or 28 seconds, I don't recall what, but I feel that that watch should be made a part of the court's exhibits and kept as part of the record in this case.
The judge responded: "I don't have to hear any more. I'll take judicial notice that the pouring took between 27 and 30 seconds. Objection noted and overruled. I timed it too." This took place after the case was committed to the jury but nevertheless it should be clarified. This is not the kind of fact of which a court may take judicial notice. The mere fact that the judge himself timed the demonstration does not make it any more appropriate as a subject of judicial notice than the prosecutor's timing.
As applied here, the theory of judicial notice is that where the court is justified by general considerations in declaring the truth of the proposition without requiring evidence from the party, it may take judicial notice of same. 9 Wigmore, Evidence (3 ed. 1940), § 2565 at 531. It is, however, plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer, op. cit. § 2569 at 540. See also, Soper v. Conly, 108 N.J. Eq. 370 (Ch. Div. 1929), aff'd 107 N.J. Eq. 537 (E. & A. 1931); Amadeo v. Amadeo, 64 N.J. Super. 417 (App. Div. 1961).
*572 The demonstration should not have been permitted. It was clearly performed for the purpose of providing evidential rebuttal of Von Ludwig's testimony. Ordinarily it is discretionary with the court as to allowing an experiment to be performed in the jury's presence. Demonstrations or experiments may be justified on the ground that they tend to enlighten the jury on an important point. "But caution and prudence should govern in each instance, depending upon the circumstances and the character of the demonstration." State v. Foulds, 127 N.J.L. 336, 344 (E. & A. 1941). The demonstration must be performed within the scope of the evidence in the case. For example, in State v. Gear, 115 N.J. Super. 151 (App. Div. 1971), certif. den. 59 N.J. 270 (1971), it was held that a witness could demonstrate that there is such a substance as water-soluble paper by performing the experiment in the presence of the jury without establishing that the paper used was the type allegedly used by the defendant. This, however, was where the purpose of the demonstration was only to show that there was such a substance.
The court in that case said:
* * * By showing the jury the use of such paper he fulfilled the requirement that the demonstration must be substantially the same as that described in his testimony. 2 Wharton, Criminal Evidence (12 ed. 1955), § 684 at 645. See, generally, 2 Underhill, Criminal Evidence (5 ed. 1956), § 517; 29 Am. Jur.2d, Evidence, § 818 at 908; Annotation, 76 A.L.R.2d 354 (1961). [115 N.J. Super. at 154]
It is difficult to understand why the prosecuting attorney did not use the receptacle which had been marked in evidence as a substantial representation of those which Festa testified as having been used in connection with setting the fire. We do not mean to indicate that the experiment would have been legally permissible even if the exhibit had been used, but it accentuates even more the impropriety of the demonstration.
*573 In Robinson v. Kathryn, 23 Ill. App.2d 5, 161 N.E.2d 477 (App. Ct. 1959), it was held that such demonstration must take place during the taking of testimony or the presentation of evidence, so as to permit an opportunity for cross-examination. As stated by the court in that case (161 N.E.2d at 479): "The place for demonstrative evidence and the time for demonstrative evidence is during the course of the trial and prior to final argument." That holding comports with our own views. Moreover, the action of the prosecuting attorney was within the prohibition against commenting upon matters outside the evidence during summation. See State v. Adams, 50 N.J. 1 (1967); State v. Hill, 47 N.J. 490 (1966); State v. Gould, 123 N.J. Super. 444 (App. Div. 1973), certif. den. 64 N.J. 312 (1973); State v. Ebron, 122 N.J. Super. 552 (App. Div. 1973), certif. den. 63 N.J. 250 (1973); State v. Bruce, 72 N.J. Super. 247 (App. Div. 1962), and State v. Bogen, 23 N.J. Super. 531 (App. Div. 1952).
Accordingly, we are of the view that the convictions must be reversed. Since a new trial must be had we have also considered appellant's contention that the trial judge erroneously denied a change of venue to Hudson County. Since appellant is the only party to be tried and the arson allegedly took place in Hudson County, we remand without prejudice to the renewal by appellant of his motion for a change of venue. The motion should be made within ten days and should be considered favorably by the assignment judge unless sound reasons exist for denying it. R. 3:14-1.
Reversed and remanded pursuant to directions. We do not retain jurisdiction.