724 A.2d 278 (1999)
318 N.J. Super. 408
STATE of New Jersey, Plaintiff-Respondent,
v.
Mario A. BILANCIO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 1999.
Decided February 19, 1999.
*279 Mark W. Catanzaro, Moorestown, for defendant-appellant.
Christine Ann Hoffman, Special Deputy Attorney General, Acting Assistant Prosecutor, for plaintiff-respondent (Debra L. Stone, Assistant Attorney General, Acting Burlington County Prosecutor, attorney; Deborah A. Siegrist, Special Deputy Attorney General, Acting Senior Assistant Prosecutor, of counsel and on the brief).
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.
The opinion of the court was delivered by SKILLMAN, J.A.D.
In Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L. Ed.2d 976 (1995), the Supreme Court held that the common law requirement that the police knock and announce their presence before entering a residence to execute a warrant is incorporated in the Fourth Amendment. However, the Court also stated that this is a flexible requirement which does not apply if there are countervailing law enforcement interests which justify a "no-knock" entry or if it would be futile for the police to knock and announce their presence. We conclude in this case that the knock and announce requirement does not apply if the police execute a warrant for the search of an unoccupied residence, because it would be futile for the police to announce their presence in that circumstance.
Defendant was indicted for possession of methamphetamine with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(8); possession of a methamphetamine, in violation of N.J.S.A. 2C:35-10a(1); possession of lysergic acid diethylamide (LSD) with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(6); *280 possession of lysergic acid diethylamide (LSD), in violation of N.J.S.A. 2C:35-10a(1); possession of marijuana with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(10); possession of marijuana, in violation of N.J.S.A. 2C:35-10a(3); possession of cocaine with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(2); possession of cocaine, in violation of N.J.S.A. 2C:35-10a(1); possession of hashish with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(11); possession of hashish, in violation of N.J.S.A. 2C:35-10a(3); possession of fifty three M-100's, in violation of N.J.S.A. 2C:39-3a; possession of a switchblade knife, in violation of N.J.S.A. 2C:39-3e; possession of hollow point bullets, in violation of N.J.S.A. 2C:39-3f; and possession of a weapon by a convicted felon, in violation of N.J.S.A. 2C:39-7a.
Defendant filed a motion to suppress, contending that the warrant authorizing the search which revealed the evidence against him was issued on the basis of an affidavit which failed to establish probable cause, incorrectly identified the property to be searched and did not set forth sufficient information to justify a no-knock entry into his residence. At the hearing on the motion, the State introduced into evidence the affidavit in support of the application for the search warrant and the warrant. The warrant affidavit, submitted by a detective in the Burlington Township Police Department, stated that a confidential informant, who had proven reliable in past investigations, informed him in September 1992 that a person known as "Archie" was dealing drugs from a location later identified as defendant's residence. The detective stated that another confidential informant told him a year and a half later that a person known as "Archie," whose real name is Mario, was selling methamphetamine, cocaine and marijuana at the same location. On April 4, and 17, 1994, this confidential informant made controlled purchases of methamphetamine and cocaine from defendant at his residence. Based on this evidence, a Superior Court judge issued a warrant for the search of defendant's residence which authorized a no-knock entry. The police discovered various drugs and weapons when they executed the warrant. The parties stipulated that no one was home when the police executed the warrant and that the police did not knock and announce their presence before they entered.
The trial court sustained the validity of the warrant and denied defendant's motion to suppress. The court observed in the course of its opinion that "the generalized information" submitted in support of the application for authorization to make a no-knock entry into defendant's residence "is thinner than what we ought to expect of police in this regard." However, the court concluded that the requirement that the police knock and announce their presence "is not implicated when a warrant is executed when there's nobody home at the residence."
Pursuant to a plea bargain, defendant subsequently pled guilty to possession of methamphetamine with the intent to distribute, possession of cocaine with the intent to distribute, possession of lysergic acid diethylamide and possession of a weapon by a convicted felon. In accordance with the plea agreement, the court sentenced defendant to concurrent five year terms of imprisonment, with eighteen months of parole ineligibility, for possession of methamphetamine with the intent to distribute, possession of cocaine with the intent to distribute and possession of lysergic acid dethylinide. The court also imposed a concurrent eighteen month term of imprisonment for possession of a weapon by a convicted felon.
On appeal from the denial of his motion to suppress, defendant makes the following arguments:
I. THE INFORMATION OBTAINED FROM A CONFIDENTIAL INFORMANT IN SEPTEMBER OF 1992, WAS STALE AND COULD NOT BE CONSIDERED BY THE COURT IN IT'S DETERMINATION OF PROBABLE CAUSE.
II. INFORMATION SUPPLIED BY THE CONFIDENTIAL INFORMANT WAS NOT FROM PERSONAL KNOWLEDGE AND THE COURT HAD NO ABILITY TO DETERMINE THE VERACITY *281 OF THE INFORMANT'S INFORMATION.
III. THE APPLICATION FOR THE WARRANT LACKED PROBABLE CAUSE TO BELIEVE THAT CONTRABAND WOULD BE LOCATED ON DEFENDANT'S PREMISES.
IV. THE WARRANT INCORRECTLY IDENTIFIED THE PROPERTY TO BE SEARCHED.
V. THE WARRANT WAS FATALLY DEFECTIVE BECAUSE INSUFFICIENT INFORMATION WAS PROVIDED TO ESTABLISH A NO-KNOCK ENTRY.
We reject defendant's first four arguments substantially for the reasons set forth in the trial court's oral opinion. These arguments are without merit and do not warrant additional discussion. R. 2:11-3(e)(2). The only substantial issue presented by the appeal is whether the evidence obtained in the search of defendant's residence must be suppressed because the warrant affidavit did not set forth facts and circumstances which justified a no-knock entry.
The requirement that a police officer who is executing a warrant at a residence first knock and announce his presence was an established part of the common law, dating back at least to the early seventeenth century, see 2 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 4.2(a) (3d ed.1996), which was "woven quickly into the fabric of early American law." Wilson, supra, 514 U.S. at 933, 115 S.Ct. at 1917, 131 L. Ed.2d at 981. In State v. Fair, 45 N.J. 77, 86, 211 A.2d 359 (1965), our Supreme Court noted that "[o]rdinarily the common law requires that peace officers may break into a dwelling house for the purpose of making an arrest only after demanding admittance and explaining their purpose." The Court also noted that the police are not required to knock and announce their presence when executing a warrant if "(1) immediate action is required to preserve evidence; (2) the officer's peril would be increased; or (3)[an] arrest would be frustrated." Ibid.
In Wilson, supra, 514 U.S. at 929, 115 S.Ct. at 1915, 131 L. Ed.2d at 979, the Court held that the "common law `knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." However, the Court also recognized that there are exceptions to this common law principle which must be considered in determining whether an unannounced entry into residential premises violates the Fourth Amendment:
The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests.... [T]he common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances.
....
Thus, because the common-law rule was justified in part by the belief that announcement generally would avoid "the destruction or breaking of any house ... by which great damage and inconvenience might ensue," courts acknowledged that the presumption in favor of announcement would yield under circumstances presenting a threat of physical violence.... Similarly, courts held that an officer may dispense with announcement in cases where a prisoner escapes from him and retreats to his dwelling.... Finally, courts have indicated that unannounced entry may be justified where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.
We need not attempt a comprehensive catalog of the relevant countervailing factors here. For now, we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment.
[Id. at 934-36, 115 S.Ct. at 1918-19, 131 L. Ed.2d at 982-84 (citations omitted).]
Two years later, in Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L. Ed.2d 615 (1997), the Court held that a per se rule permitting the police to dispense with the knock and announce requirement anytime they execute a search warrant at a residence *282 in a felony drug investigation violates the Fourth Amendment:
[T]he fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.
In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.
[Id. at 394, 117 S.Ct. at 1421, 137 L. Ed.2d at 624.]
In Richards, the Court also held that the determination whether the facts and circumstances of a particular entry justify dispensing with the knock and announce requirement does not have to be made by the issuing judge but can be made instead by the police officers who execute the warrant. Id. at 395-96, 117 S.Ct. at 1422, 137 L. Ed.2d at 625. In fact, the issuing judge in Richards had deleted a portion of the proposed warrant which would have authorized the police to make a no-knock entry. Nevertheless, the Court concluded that "this fact does not alter the reasonableness of the officers' decision, which must be evaluated as of the time they entered the hotel room." Id. at 395, 117 S.Ct. at 1422, 137 L. Ed.2d at 625. The Court observed in a footnote that:
The practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time. But as the facts of this case demonstrate, a magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed.
[520 U.S. at 396 n. 7, 117 S.Ct. at 1422, 137 L. Ed.2d at 625.]
The conceptual underpinning for the Court's conclusion that authorization for a no-knock entry does not have to be set forth in a warrant may be found in Dalia v. United States, 441 U.S. 238, 99 S.Ct. 1682, 60 L. Ed.2d 177 (1979). In concluding that the Fourth Amendment does not require an order authorizing an electronic surveillance to include specific authorization for a covert entry to install the surveillance equipment, the Court stated:
The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." ... [The] Court has interpreted [these words] to require only three things. First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. Finally, "warrants must particularly describe the `things to be seized,'" as well as the place to be searched.
....
Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to [these] three requirements ... search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrantsubject of course to the general Fourth Amendment protection "against unreasonable searches and seizures."
[441 U.S. at 255, 257, 99 S.Ct. at 1692-93, 60 L. Ed.2d at 191-92 (citations omitted).]
*283 As in Dalia, the decision whether the police must knock and announce their presence before entering a residence involves the "precise manner" in which a warrant is "to be executed." Id. at 257, 99 S.Ct. at 1693, 60 L. Ed.2d at 192. Therefore, the police are permitted to execute a warrant by means of a no-knock entry, without explicit authorization in the warrant, subject to judicial review of the reasonableness of that action in a hearing on a motion to suppress. Richards, supra, 520 U.S. at 395-96, 117 S.Ct. at 1422, 137 L. Ed.2d at 625; see generally 2 LaFave, supra, § 4.8(g).[1]
Applying these principles to this case, we conclude that the affidavit in support of the application for the search warrant did not set forth specific facts and circumstances which justified the issuance of a no-knock warrant. However, the erroneous authorization for a no-knock entry into defendant's residence does not require the suppression of the evidence obtained in the search, because no one was at home when the warrant was executed.
The sole justification in the warrant affidavit for a no-knock entry reads as follows:
To protect the destruction of any evidence of the crime of Narcotics Distribution and for the safety of the officers executing the search warrant. Also, based on the affiant's past experience persons distributing narcotics are frequently armed with firearms or other weapons to protect their interest.
This recitation of the risk of destruction of evidence and danger to police officers executing the warrant is not based on any "particular circumstances" described in the warrant affidavit. Richards, supra, 520 U.S. at 394, 117 S.Ct. at 1421, 137 L. Ed.2d at 624. Rather, it is simply boilerplate language which could be inserted in any application for a warrant to search a residence believed to be used for drug distribution.
The State argues that even if the warrant affidavit's statement of reasons for a no-knock entry was insufficient, the risk of destruction of evidence by compliance with the knock and announce requirement was adequately demonstrated by other parts of the affidavit which alleged that defendant retrieved drugs from an unknown location on his property when he made the drug sales to the State's confidential informant. However, the warrant affidavit did not set forth any information concerning the size or layout of defendant's property, whether persons other than defendant resided there, or whether the police reasonably expected defendant or other persons involved in drug distribution to be present when the search was conducted. Consequently, the affidavit did not contain sufficient information to justify a finding of reasonable suspicion that evidence would be destroyed if the police knocked and announced their presence before executing the warrant. See Richards, supra, 520 U.S. at 393, 117 S.Ct. at 1421, 137 L. Ed.2d at 623 (noting that a no-knock entry may not be justified if a search is "conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence").
Finally, we turn to the question whether the invalidity of the authorization for a no-knock entry requires suppression of the evidence obtained in the search of defendant's *284 residence even though no one was home at the time. To answer this question, it is appropriate to consider the purposes served by the requirement that the police knock and announce their presence before executing a warrant at a residence. These purposes are (1) "[decreasing] the potential for violence, as an `unannounced breaking and entering into a home could quite easily lead an individual to believe that his safety was in peril and cause him to take defense measures'"; (2) "[protecting] privacy by minimizing the chance of entry of the wrong premises and subjecting the innocent persons to `the shock, fright or embarrassment attendant upon an unannounced police intrusion,' and even when there is no mistake, allow[ing] those within a brief time to prepare for the police entry"; and (3) "[preventing] the physical destruction of property by giving the occupant `the opportunity to voluntarily admit the officer into his home.'" 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure (1984) § 3.4(h) (citations omitted).
It is clear to us that none of these purposes would be advanced by requiring the police to knock and announce their presence when they execute a warrant to search an unoccupied residence. First, it is obvious that there is no potential for violence in this circumstance. Second, although any residential search obviously involves an intrusion into the occupants' privacy, there is no danger when a home is vacant that "[i]nnocent citizens [will] suffer the shock, fright or embarrassment attendant upon an unannounced police intrusion." Ker v. California, 374 U.S. 23, 57, 83 S.Ct. 1623, 1642, 10 L. Ed.2d 726, 752 (1963) (Brennan, J., dissenting). Moreover, the invasion of privacy involved in executing a warrant to search an unoccupied residence is the same regardless of whether the police go through the useless formality of knocking before entering.[2] Third, although the process of gaining entry to execute a warrant to search an unoccupied residence is likely to involve some destruction of property, this is also true when the police announce their presence and the occupants refuse to admit them voluntarily. See U.S. v. Ramirez, 523 U.S. 65, 118 S.Ct. 992, 140 L. Ed.2d 191 (1998) (holding that the validity under the Fourth Amendment of a no-knock entry does not depend on whether it results in the destruction of property).
Moreover, Wilson and Richards provide at least indirect support for the conclusion that the police are not required to knock and announce their presence when they execute a warrant to search an unoccupied residence. In Wilson, the Court stated that "the common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances," and as support for this statement, the Court cited the holding in Pugh v. Griffith, 7 Ad & E 827, 840-41, 112 Eng. Rep. 681, 686 (KB 1838), that "the necessity of a demand ... is obviated, because there was nobody on whom a demand could be made." 514 U.S. at 934, 115 S.Ct. at 1918, 131 L. Ed.2d at 983. In Richards, the Court indicated that one circumstance justifying a no-knock entry is where it would be "futile" for the police to announce their presence. 520 U.S. at 394, 117 S.Ct. at 1421, 137 L. Ed.2d at 624. Compliance with the knock and announce requirement surely would be futile when there is no one at home to hear the police knocking.
Additional support for this conclusion is provided by decisions in other jurisdictions which hold that a no-knock entry into an unoccupied residence to execute a warrant does not violate the Fourth Amendment or statutory provisions codifying the common law knock and announce rule. Payne, supra, 508 F.2d 1391; People v. Hancock, 301 Ill. App.3d 786, 235 Ill.Dec. 82, 704 N.E.2d 431 (1998); Farber, supra, 314 N.W.2d 365; Commonwealth v. Baker, 361 Pa.Super. 401, 522 A.2d 643, 645-47 (1987); State v. Iverson, 364 N.W.2d 518, 526-27 (S.D.1985); State v. Buck, 756 P.2d 700 (Utah 1988); see also 2 *285 LaFave, supra, § 4.8(b), at 605 (noting that "[e]ven as to dwellings, it is of no consequence that the police failed to announce their authority and purpose prior to entry if no one was present therein at the time."). But see Commonwealth v. Wallace, 293 Pa.Super. 73, 437 A.2d 996 (1981).
Defendant's reliance upon the principle that "questions concerning the validity of a search warrant hinge upon the information contained within the four corners of the supporting affidavit," State v. Sheehan, 217 N.J.Super. 20, 24, 524 A.2d 1265 (App.Div. 1987), is misplaced. The affidavit in support of the application to search defendant's residence clearly demonstrated the probable cause required to justify the search and adequately described the places to be searched and the things to be seized. Consequently, the warrant affidavit contained all the information required to justify issuance of a search warrant, see Dalia, supra, 441 U.S. at 255, 99 S.Ct. at 1692, 60 L. Ed.2d at 191, and even though the affidavit did not justify the authorization for a no-knock entry, the police could have conducted a valid search by disregarding that authorization and knocking and announcing their presence before entering defendant's residence. Cf. Richards, supra, 520 U.S. at 396, 117 S.Ct. at 1422, 137 L. Ed.2d at 625. Thus, in executing a valid search warrant containing an invalid authorization for a no-knock entry into defendant's residence, the police were in the same position they would have been in if the warrant did not authorize a no-knock entry. In that event, the police still could have entered without knocking if they were confronted with exigent circumstances or if, as in this case, it would have been futile to knock and announce their presence. Ibid. Therefore, because no one was home when the police executed the warrant to search defendant's residence, the invalid authorization for a no-knock entry can be properly viewed as surplusage, and the remainder of the warrant, and the search conducted thereunder, were valid.[3]
Affirmed.
NOTES
[1] Although there is no decision which directly addresses the question whether the New Jersey Constitution requires the authorization for a no-knock entry to be set forth in the warrant, our courts have sustained the validity of searches of residences conducted after no-knock entries without indicating that the warrant authorized that form of entry. See, e.g., State v. Love, 233 N.J.Super. 38, 42-45, 558 A.2d 15 (App.Div.), certif. denied, 118 N.J. 188, 570 A.2d 954 (1989); State v. Juliano, 97 N.J.Super. 28, 30-32, 234 A.2d 236 (App.Div.1967), modified on other grounds, 52 N.J. 232, 245 A.2d 17 (1968); see also State v. Jones, 143 N.J. 4, 18-19, 667 A.2d 1043 (1995); cf. State v. Goodson, 316 N.J.Super. 296, 304-05, 720 A.2d 381 (App.Div.1998) (suggesting that even if a warrant does not authorize a no-knock entry, a search can be sustained if "there [are] sufficient facts and circumstances present when the search [is] executed to justify dispensing with the knock and announce requirement"). In any event, the search of defendant's premises would be valid even if the New Jersey Constitution were interpreted to require the authorization for a no-knock entry to be included in a warrant because we are satisfied that the requirement that the police knock and announce their presence before executing a warrant for the search of a residence does not apply when the residence is unoccupied.
[2] Although defendant does not raise the point, we note that it is firmly established that the police are not required to wait for the return of the occupants of an unoccupied residence before executing a search warrant. See, e.g., Payne v. United States, 508 F.2d 1391, 1394 (5th Cir.), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L. Ed.2d 263 (1975); United States v. Gervato, 474 F.2d 40, 43-44 (3d Cir.), cert. denied, 414 U.S. 864, 94 S.Ct. 39, 38 L. Ed.2d 84 (1973); State v. Farber, 314 N.W.2d 365, 367 (Iowa 1982).
[3] We note that this is not a case where the common law requirement that the police knock and announce their presence before entering a private residence to execute a warrant was simply disregarded. Instead, the police applied for and obtained authorization from the court for a no-knock entry. The application was supported by an affidavit that contained the kind of allegations about the risk of destruction of evidence and danger to police officers which, before Richards, were commonly understood to justify a no-knock entry to execute a search warrant in a drug trafficking case. See Richards, supra, 520 U.S. at 390-91, n. 1, 117 S.Ct. at 1420, 137 L. Ed.2d at 622. Because Richards was decided three years after the warrant in this case was issued, both the police officers who applied for the warrant and the judge who issued it could reasonably have believed that the warrant affidavit was sufficient to justify a no-knock entry. Thus, we have no need to consider whether suppression of evidence would be required if the police made a no-knock entry without a showing of circumstances justifying this form of entry and made no effort to determine whether the residence was occupied, but it turned out by chance to be unoccupied. Cf. State v. Johnson, 118 N.J. 639, 653, 573 A.2d 909 (1990) (holding that one factor in the determination of whether evidence is the "fruit" of illegal police conduct is "the flagrancy and purpose of the police misconduct") (citing Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L. Ed.2d 416, 427 (1975)).