818 A.2d 392 (2003)
358 N.J. Super. 420
STATE of New Jersey, Plaintiff-Respondent,
v.
Arthur JONES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 29, 2003.
Decided February 28, 2003.
*394 Yvonne Smith Segars, Public Defender, attorney for appellant (Sandra K. Manning, Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Johanna Barba, Deputy Attorney General, of counsel and on the brief).
Before Judges KESTIN, FALL and WEISSBARD.
*393 The opinion of the court was delivered by WEISSBARD, J.A.D.
A nine-count indictment charged defendant, Arthur Jay Jones,[1] with third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3) (count one); third-degree conspiracy to possess cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1), N.J.S.A. 2C:35-5b(3), and N.J.S.A. 2C:5-2 (count two); second-degree possession of cocaine with intent to distribute within 500 feet of public property, N.J.S.A. 2C:35-7.1 and N.J.S.A. 2C:35-5a(1) (count three); second-degree conspiracy to possess cocaine with intent to distribute within 500 feet of public property, N.J.S.A. 2C:35-7.1, N.J.S.A. 2C:35-5a(1), and N.J.S.A. 2C:5-2 (count four); fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3 (count five); fourth-degree conspiracy to possess drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3 and N.J.S.A. 2C:5-2 (count six); second-degree employing a juvenile in a drug distribution scheme, N.J.S.A. 2C:35-6 (count seven); third-degree possession of cocaine, N.J.S.A. 2C:35-10a(1) (count eight), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a (count nine).
After denial of his motion to suppress evidence obtained pursuant to a search warrant, defendant pled guilty to third-degree possession of a controlled dangerous substance (count eight). In return for his guilty plea, the State agreed to dismiss the remaining counts of the indictment and recommended that defendant be sentenced to a four-year term of imprisonment consecutive *395 to any violation of probation defendant was then serving.
On March 11, 2002, defendant was sentenced, in accordance with the terms of the plea bargain, to a four-year term. Appropriate penalties were also imposed.
On appeal defendant raises the following arguments:
POINT I
THE JUDGE BELOW ERRED IN DENYING THE MOTION TO SUPPRESS EVIDENCE SINCE THE OFFICER FAILED TO ARTICULATE A REASONABLE SUSPICION IN THIS PARTICULAR CASE THAT ISSUANCE OF THE NO-KNOCK SEARCH WARRANT WAS NECESSARY TO PREVENT DESTRUCTION OF EVIDENCE OR TO PROTECT THE OFFICERS' SAFETY.
POINT II
THE JUDGE BELOW ERRED IN DENYING THE MOTION TO SUPPRESS SINCE PROBABLE CAUSE COULD NOT BE DETERMINED FROM THE FACTS ALLEGED IN THE WARRANT APPLICATION BECAUSE THE INFORMANT WAS ADMITTED TO BE OF UNKNOWN RELIABILITY AND DID NOT ALLEGE FACTS WITH SPECIFICITY.
POINT III
THE JUDGE BELOW ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE WARRANT AUTHORIZING THE SEARCH OF DEFENDANT-APPELLANT ARTHUR J. JONES WAS OVERBROAD AND NO EXIGENT CIRCUMSTANCES EXISTED TO JUSTIFY THE SEARCH.
POINT IV
THE JUDGE BELOW INCORRECTLY WEIGHED THE AGGRAVATING AND MITIGATING FACTORS, THEREBY IMPOSING A LONGER SENTENCE THAN WARRANTED BY THE OFFENSE.
We agree that the search in question was unlawful for both of the reasons stated in defendant's Points I and II, absence of probable cause for the warrant and insufficient facts supporting the "no-knock" entry provision in the warrant.
The facts elicited during the suppression motion were as follows. During the week of June 18, 2001, members of the Cape May County Prosecutor's Office Narcotics Task Force received information from a confidential informant of "unknown reliability," asserting that Darryl Jones, Kenneth Powell, and Stephanie Williams were distributing drugs from a single-family residence located at 4009 Park Boulevard. The informant also stated that Jones, Powell, and Williams were selling drugs from the Sportsmen's Tavern at 3711 New Jersey Ave., in Wildwood.
The police, with the aid of the informant, conducted three controlled purchases of cocaine from individuals at the premises at 4009 Park Boulevard. During these controlled buys, officers would photocopy and record serial numbers of money to be used in the buy. They would search the informant to make sure that he[2] had neither drugs nor money on him when he entered the premises. The police then would provide the informant with the marked, "buy" money. The informant would then proceed directly to 4009 Park Boulevard, which was constantly under surveillance by Narcotics Task Force Agents. While inside, the informant would allegedly purchase *396 rock cocaine from Darryl Jones and Williams. When the informant exited the building, he immediately reported to an undercover officer, who again searched him to make sure that the money-drug exchange had been made. The controlled purchase was repeated twice using the same procedure[3]. The informant identified Darryl Jones and Powell as the men who sold the cocaine to him, and also identified Williams as being present during at least one of the controlled sales.
Task Force members performed criminal background checks on Powell and Darryl Jones, and found that Powell had three prior drug convictions and Jones had been arrested twice previously for distribution of narcotics and distribution of drugs within 1000 feet of a school. Jones had also been previously arrested for unlawful possession of a weapon and aggravated assault with a weapon.
On June 22, 2001, Narcotics Task Force Agent Darrell Shelton applied for a search warrant before a municipal court judge. Agent Shelton sought authorization to search the premises located at 4009 Park Boulevard. Additionally, the application sought authority to search the persons of Darryl Jones, Stephanie Williams, Kenneth Powell, and "[a]ny person reasonably believed or identified to have [a] connection to illegal property or contraband during the execution of the search warrant."
Agent Shelton also requested that the warrant be executed "without knocking and announcing the identity and purpose of the law enforcement officers." This request was made due to the "easy disposal of the evidence" and, based on the previous arrests of Darryl Jones for assault and unlawful possession of a weapon, for the "physical protection of the police officers" when executing the warrant. On the same date, the judge granted Agent Shelton the "no-knock" warrant.
Immediately before the police executed the search warrant, the confidential informant performed one more "controlled buy," to ensure the continued presence of drugs at the location. After the final "buy," police executed the warrant and found defendant, Arthur Jones, seated at a table in the apartment. They found cocaine, plastic baggies, and a razor blade on the table. Defendant was then arrested and searched. Found on defendant's person were two of the marked bills used in the "controlled buys."
Probable cause is "a flexible, nontechnical concept." State v. Kasabucki, 52 N.J. 110, 116, 244 A.2d 101 (1968). Our jurisprudence "characterizes probable cause `as a common-sense, practical standard for determining the validity of a search warrant.'" State v. Sullivan, 169 N.J. 204, 211, 777 A.2d 60 (2001) (quoting State v. Novembrino, 105 N.J. 95, 120, 519 A.2d 820 (1987)). When a search is conducted pursuant to a warrant, the burden of proving the invalidity of that search is on the defendant. The defendant must show "that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." State v. Valencia, 93 N.J. 126, 133, 459 A.2d 1149 (1983). When a search is conducted with a warrant, it is presumed valid and a reviewing court must give substantial deference to the determination of the issuing judge. Sullivan, supra, 169 N.J. at 211, 777 A.2d 60. A warrant both cloaks the search with "an aura of prima facie legality" and constitutes a substantial factor in favor of a conclusion of validity. *397 Kasabucki, supra, 52 N.J. at 123, 244 A.2d 101; see also State v. Mark, 46 N.J. 262, 273, 216 A.2d 377 (1966); State v. Jones, 308 N.J.Super. 15, 30, 705 A.2d 373 (App. Div.1998).
In this case, the chain of events leading to the issuance of the warrant began with information received from a confidential informant of unknown reliability. Thus, the informant's information could only be credited if it were corroborated by independent investigation. Novembrino, supra, 105 N.J. at 113, 519 A.2d 820. The follow-up investigation here involved three "controlled buys" between June 18 and June 22. In State v. Sullivan, supra, the Court addressed the validity of a search warrant based, as here, upon information from an informant of untested reliability and two controlled buys. In that case, the location in question was a first floor apartment in a three-story building containing six apartments. The informant had provided the police with the first name and physical description of the alleged drug dealer, as well as a telephone number for the apartment and a description of the building. Id. at 207-09, 777 A.2d 60. After the two controlled buys the police obtained gas and electric records which listed the contact phone number for the subscriber, which was the same number the informant had supplied. In addition, the police tested the substance obtained by the informant as a result of each buy and confirmed that it was cocaine.
The Court rejected "the State's suggestion that a controlled buy conclusively establishes probable cause," opting instead for a totality of circumstances approach which does not focus "exclusively on any one factor." Id. at 216, 777 A.2d 60. The Court concluded that the corroborative information gleaned from the gas and electric records as to the telephone number and the confirmation that the substance was cocaine, demonstrated probable cause. Id. at 216, 777 A.2d 60.
A comparison of the facts in Sullivan with those present here is instructive, if not dispositive. In this case the building in question was a single family residence rather than the multi-apartment dwelling in Sullivan. As a result, no question arises as to whether the informant went to a residence other than the one for which the warrant was obtained. On the other hand, unlike Sullivan, the officers here did nothing to confirm that the suspects, Darryl Jones, Kenneth Powell or Stephanie Williams, lived in or were otherwise connected to the residence. No electric or gas records, phone records or tax records were checked. The record check made was for criminal histories, which revealed that Powell had at least two drug distribution convictions, the last being only eighteen months earlier. Darryl Jones also had two prior drug related arrests but no record of conviction for those offenses.
Most significant, in our view, is that, in stark contrast to Sullivan, the officers in this case did nothingat least as far as the warrant application revealedto confirm that the substance brought to them by the informant after his "buy" was actually cocaine. The only statement in the affidavit with respect to each incident was that the informant "turned over an amount of suspected rock cocaine." While we understand that a full laboratory test is not available under the time constraints of an ongoing investigation, not even a routine field test was conducted, as apparently had been done and was considered a significant corroborating circumstance in Sullivan. The absence of such confirmation significantly, if not totally, undermines the normal persuasiveness of a controlled buy. Id. at 217, 777 A.2d 60. It is fundamental to a controlled buy that the substance bought be a controlled substance. While *398 that showing need not be made with absolute certainty, there must at least be a scientific probability that the substance is what it is asserted to be.
Even according the warrant the substantial deference to which it is entitled, id. at 211, 777 A.2d 60, we conclude that probable cause was not established. We also conclude that the warrant was invalid because it was executed, according to its terms, without any pre-entry announcement of purpose, i.e., "without knocking and announcing the identity and purpose of the law enforcement officers."
In State v. Johnson, 168 N.J. 608, 615, 775 A.2d 1273 (2001), the Court briefly traced the history of the rule:
The requirement that law enforcement officers knock and announce their presence before entering a dwelling predates our federal and State Constitutions. As a long-standing component of the common law, the "knock-and-announce" rule reflects "the ancient adage that a man's house is his castle." Miller v. United States, 357 U.S. 301, 307, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332, 1337 (1958). The rule was pronounced about 400 years ago in Semayne's Case, 79 Eng. Rep. 194 (K.B.1603), although some commentators trace its legal origin to an earlier period in the thirteenth century, around the time of the Magna Carta. Wilson v. Arkansas, 514 U.S. 927, 932 n. 2, 115 S.Ct. 1914, 1917 n. 2, 131 L.Ed.2d 976, 981 n. 2 (1995).
In Miller, supra, 357 U.S. at 307, 78 S.Ct. at 1194-95, 2 L.Ed.2d at 1337, the Court took note of the most eloquent articulation of the principle, attributed to William Pitt in a parliamentary debate in 1763:
The poorest man may in his cottage bid defiance to all the forces of the crown. It may be frail; its roof may shake, the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enterall his force dares not cross the threshold of the ruined tenement!
"The common-law knock-and-announce principle was woven quickly into the fabric of early American law." Wilson v. Arkansas, supra, 514 U.S. at 933, 115 S.Ct. at 1917, 131 L.Ed.2d at 981. The rule, whose applicability in New Jersey was at first grudgingly acknowledged, State v. Smith, 37 N.J. 481, 497-500, 181 A.2d 761 (1962), State v. Doyle, 42 N.J. 334, 345, 200 A.2d 606 (1964), but finally conceded in State v. Fair, 45 N.J. 77, 211 A.2d 359 (1965), serves a number of purposes: 1) "decreasing the potential for violence"; 2) "protection of privacy"; and 3) "preventing the physical destruction of property." 2 Wayne R. LaFave, Search and Seizure § 4.8(a) at 599 (3rd ed.1978), quoted with approval in State v. Johnson, supra, 168 N.J. at 616, 775 A.2d 1273.
Although the knock-and-announce requirement is mandated by centuries of common law as well as our state and federal Constitutions, it is not absolute. In State v. Fair, supra, the Court outlined the three main exceptions to the knock-and-announce requirement. Police do not need to comply with the knock-and-announce rule if: "1) immediate action is required to preserve evidence; 2) the officer's peril would be increased; or 3) the arrest would be frustrated." 45 N.J. at 86, 211 A.2d 359 (citations omitted). However, in State v. Johnson, supra, 168 N.J. at 617, 775 A.2d 1273, the Court recognized that these exceptions could "swallow the rule" that police must first announce their presence, "particularly in drug investigations in which there are often grounds to suspect that immediate action is required to preserve evidence, protect the safety of police officers, or effectuate a successful arrest." The Court noted that the United *399 States Supreme Court had stated that "there can be no blanket exception to the knock-and-announce rule in felony drug cases consistent with the Fourth Amendment." Ibid. (citing Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)).
Our Supreme Court, in evaluating Richards, noted:
[T]he task of courts evaluating the propriety of a no-knock provision is to determine whether the applying officer has articulated a reasonable suspicion to believe that one or more exceptions to the knock-and-announce rule are justified. Although reasonable suspicion is a less demanding standard than probable cause, satisfying the doctrine of reasonable suspicion "requires at least a minimal level of objective justification for [taking the police action]." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 576 (2000). "The officer must be able to articulate more than an `inchoate and unparticularized suspicion or "hunch"' of criminal activity." Ibid. (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968)).
[Johnson, supra, 168 N.J. at 618, 775 A.2d 1273].
The Court therefore held, that: 1) police must have a "reasonable, particularized suspicion that a no-knock entry is required" to prevent the destruction of evidence, to protect the officer's safety, or to effectuate an arrest or seizure of evidence; 2) the officer must articulate the reasons for that suspicion and may base those reasons on "the totality of the circumstances with which he or she is faced"; and 3) the officer must articulate a minimal level of objective justification to support the no-knock entry, "meaning it may not be based on a mere hunch." Id. at 619, 775 A.2d 1273.
The facts of Johnson parallel the facts of the present case to a substantial degree. In Johnson, as here, police officers set up a controlled buy using a confidential informant. After the buy revealed the sale of drugs from an apartment building, the officers applied for a search warrant. In the oral application made to the court, the applicant described the controlled buy and informed the court that a different informant had told him that a black male named "Earthquake" was selling large amounts of heroin and cocaine from the apartment. The officer also submitted a written certification outlining his credentials and experience in drug investigations. The officer concluded his recitation of the facts by stating, "[t]herefore your Honor I'm requesting a no knock search warrant for [the] officers['] safety and it means that the narcotics can be easily [ ] destroyed...." Id. at 612-13, 775 A.2d 1273 (alterations in original).
The Johnson Court found the officer did not expressly articulate any suspicion that evidence could be destroyed, nor any particularized suspicion that the officers' safety would be in peril if they were required to first announce their presence. Id. at 620-21, 775 A.2d 1273.
In the present case, Shelton, in his written application, stated, in pertinent part:
I hereby request that the warrant be executed ... [a]nytime ... [a]nd/or without knocking and announcing the identity and purpose of the law enforcement officers. This request is being made for the following reason(s): The easy disposal of the evidence and the physical protection of the police officers when making entry on a search warrant in drug related cases as specifically documented below. Additionally, the information set forth in paragraph (e) [sic] above which reflects a November 6, 1994 arrest of Darryl Jones by [Cape May *400 Police Department] for aggravated assault of a police officer and unlawful possession of a weapon.
The officer's first claim was that the evidence could be easily destroyed, but, as noted in Johnson, "small quantities of narcotics sold out of a person's home are almost always susceptible to destruction or disposal." Johnson, supra, 168 N.J. at 620, 775 A.2d 1273. If such a reason alone justified a no-knock entry, "it would justify an unannounced entry in virtually every instance involving a residential search, thereby resembling the kind of blanket rule forbidden by Richards." Ibid. (citing State v. Bamber, 592 So.2d 1129, 1130 (Fla.Dist.Ct.App.1991), approved, 630 So.2d 1048 (Fla.1994)).
To satisfy the "destruction of evidence" exception to the knock-and-announce rule, the police must articulate some reason "specific to the crime, to the person under investigation, or to some other permissible factor," that leads them to reasonably believe that the destruction of evidence is "more than a hypothetical possibility." Johnson, supra, 168 N.J. at 620, 775 A.2d 1273.
In attempting to ascertain what factors may set forth a reasonable suspicion that evidence will be destroyed, the Johnson court looked to State v. Bilancio, 318 N.J.Super. 408, 724 A.2d 278 (App.Div.), certif. denied, 160 N.J. 478, 734 A.2d 793 (1999), for guidance:
In Bilancio the Appellate Division considered an application for a no-knock warrant, concluding that it did not set forth a reasonable suspicion that evidence would be destroyed if the police knocked and announced their presence before entering the premises. In reaching that conclusion, the court stated that "the warrant affidavit did not set forth any information concerning the size or layout of defendant's property, whether persons other than defendant resided there, or whether the police reasonably expected defendant or other persons involved in drug distribution to be present when the search was conducted." [Bilancio, supra, 318 N.J.Super. at 417, 724 A.2d 278].
[Johnson, supra, 168 N.J. at 620, 775 A.2d 1273].
As in Bilancio, none of those factors were set out in the application for the search warrant in this case. The applying officer simply relied on the fact that drugs are easily destroyed. That sort of "blanket" exception is not acceptable. See Richards, supra, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615; Johnson, supra, 168 N.J. 608, 775 A.2d 1273.
Also, the applying officer articulated no particularized suspicion that the officers' safety would be jeopardized by first knocking and announcing their presence. The only information provided was that Darryl Jones had been previously arrested for "aggravated assault on a police officer and unlawful possession of a weapon." However, the police had, on three previous occasions, conducted controlled buys using the informant and in none did the informant ever suggest that weapons were present in the residence. Other than Darryl Jones's prior arrest, the officer offered no evidence that Jones, or any other person named in the warrant, had a propensity for violence. Further, there was no evidence submitted that Darryl Jones would even be present in the residence when the warrant was executed. The affidavit stated that the first two drug purchases were made from Jones, but the last was made from Kenneth Powell. It was not mentioned whether Jones was present during the final buy.
We reject the State's contention that Darryl Jones's prior arrest for assault and *401 possession of a weapon supported the issuance of the "no-knock" provision of the warrant. It is significant that Jones was never convicted of the assault charge; rather, he pled down to a fourth degree weapons charge.
Other jurisdictions have recognized that prior arrests do not give rise to a "reasonable suspicion" that would permit avoidance of the knock-and-announce requirement. In State v. Eason, 245 Wis.2d 206, 629 N.W.2d 625 (2001), the Wisconsin Supreme Court found that an affidavit to search a residence without first knocking and announcing "was not sufficiently particularized to establish reasonable suspicion." Id. at 634. The facts of that case are very similar to the case before us.
In Eason, the affidavit related defendant's arrest for aggravated assault. The assault arrest was almost ten years old at the time. The Supreme Court of Wisconsin recognized that aggravated assault "arguably, is a crime that suggests that he has used violence in the past and may resort to it again. However, ... [t]he arrest was almost ten years old at the time the search warrant was issued. Moreover, it was just thatan arrest, not a conviction." Ibid. As in Eason, Darryl Jones had been arrested in 1994 on assault and weapons charges, close to seven years prior to the issuance of the warrant. Furthermore, he was not convicted. As the Eason court noted, it was reasonable to assume an "innocent explanation" for the arrest without a conviction. Ibid. The same may be said here.
In Eason, the Wisconsin Supreme Court found that, as in the present case, the prior arrest of defendant, even when taken together with the easily disposable nature of cocaine and the likelihood that persons involved in drug crimes will be armed, was not sufficiently particularized to establish the reasonable suspicion necessary for a no-knock entry. Id. at 634-35. See also State v. Botelho, 638 N.W.2d 770 (Minn. App.2002) (allegations in application for no-knock search warrant were not sufficiently particularized to support a reasonable suspicion of a threat to officer safety or threat of destruction of evidence so as to justify an unannounced entryeven though the officer alleged that there were periodic visitors with criminal histories of drug possession and dangerous weapons, there was general practice among drug dealers to carry weapons, and drugs could be easily destroyed).
Although, "an officer can couple knowledge of prior criminal involvement with more concrete factors in reaching a reasonable suspicion of current criminal activity," United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir.1997) (citing United States v. Sandoval, 29 F.3d 537, 542 (10th Cir.1994)), no such concrete factors existed here. As stated above, the confidential informant was in the residence three times before the application for the warrant was made and never mentioned any weapons present. Furthermore, the police conducted one more "controlled buy" after obtaining the warrant, but before executing it. Again, the informant did not alert the officers to the presence of any weapons.[4]
While State v. Johnson, supra, 168 N.J. at 624-25, 775 A.2d 1273, does suggest that a person's criminal history *402 might be "used to support a reasonable suspicion to believe that officer safety would be compromised without a no-knock entry," a stale prior arrest does not provide the basis for a reasonable suspicion that police safety is at risk.
Furthermore, in denying the motion to suppress, the judge took note of Jones's arrest and stated:
Someone with that kind of a charge in their past, when joined with the unfortunate marriage that often occurs between drugs and weapons, was a sufficient basis for the magistrate to have issued the no-knock provision of the warrant.
Such a linkage between drugs and weapons appears to approach, if not adopt, the "kind of blanket rule forbidden by Richards." Johnson, supra, 168 N.J. at 620, 775 A.2d 1273.
When determining whether "reasonable suspicion" exists for a no-knock warrant, we must weigh the "totality of the circumstances." Johnson, supra, 168 N.J. at 619, 775 A.2d 1273. While the showing of a reasonable suspicion justifying a no-knock entry is "not high, ... the police should be required to make it whenever [the] reasonableness of [the] entry is challenged." Id. at 618, 775 A.2d 1273 (quoting Richards, supra, 520 U.S. at 394-95, 117 S.Ct. at 1422, 137 L.Ed.2d at 622). Under the circumstances of this case, the police officer did not articulate particularized reasons that would allow for an exception to the basic and significant legal tenet that law enforcement officers must knock and announce their presence before entering another's dwelling. The rule is not a mere technicality, but is at the core of the fundamental values protected by the state and federal constitutional guarantees against unlawful searches and seizures. "[T]he [knock and announce] requirement is of the essence of the substantive protections which safeguard individual liberty." Ker v. California, 374 U.S. 23, 49, 83 S.Ct. 1623, 1637, 10 L.Ed.2d 726, 747 (1963) (Brennan, J. dissenting in part). "Personal liberty is not a game. It is the hallmark of our country. Upholding the rule of law will not always produce a popular outcome, but it will preserve freedom. That is our duty as an independent judiciary." State v. Eason, supra, 629 N.W.2d at 660 (Prosser, J., dissenting).
As a result, for either of the reasons discussed, the search of 4009 Park Boulevard was unlawful and the motion to suppress should have been granted.[5]
Reversed.
NOTES
[1] Darryl James Jones, defendant's brother, was also named in every count of the indictment. Additionally, Celita Anita Battle, Stephanie Michele Thompson a.k.a. Stephanie Michele Johnson, and Catherine Alethea Devane were named in counts eight and nine.
[2] As noted by the State, the search warrant and application took care to not identify the gender of the confidential informant, so as to protect the informant's identity. The masculine pronoun is used only for ease of reference.
[3] The dates of the purchases were not disclosed so as to protect the confidential informant's identity.
[4] While the presence of a weapon in the apartment during this last "controlled buy" would have come too late to give a reasonable suspicion supporting the "no-knock" warrant, it could have created an exigent circumstance that would have allowed the officers to enter without first announcing their presence even in the absence of a valid "no-knock" warrant. See Wilson v. Arkansas, 514 U.S. 927, 934, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976, 982 (1995); Johnson, supra, 168 N.J. at 616, 775 A.2d 1273.
[5] We reject defendant's argument that the warrant was overbroad in authorizing the search of persons found within the premises. R. 2:11-3(e)(2). In light of our disposition, there is no need for us to address defendant's sentencing argument.